**Queen Ann GLASS, Plaintiff–Appellant,**

v.

**CITY OF CHATTANOOGA,
Defendant–Appellee.**

Supreme Court of Tennessee,
at Knoxville.

July 12, 1993.

Harry Berke, Berke, Berke & Berke, Chattanooga, for appellant.

Randall L. Nelson, City Atty. for the City of Chattanooga and Wm. Shelley Parker, Jr., Chattanooga, for appellee.

### OPINION

O'BRIEN, Justice.

This case involves a suit for damages resulting from a motor vehicle accident. The sole issue for determination concerns the efficacy of the fellow servant doctrine in contemporary jurisprudence in this State.

The circumstances giving rise to this action are short and undisputed. At the time of the injury the plaintiff, Queen Ann Glass, was employed as a school bus driver by the defendant, City of Chattanooga. On 7 February 1989, Ms. Glass was seated alone in the driver's seat of her parked school bus. Positioned immediately in front of Ms. Glass' bus was another parked school bus operated by Steve May, also an employee of the City of Chattanooga. It is stipulated by the parties that when Mr. May attempted to drive his bus away from the curb, he inadvertently had the transmission in reverse gear and negligently backed into Ms. Glass' parked bus, causing her injury. The plaintiff filed suit against the City alleging she was entitled to damages proximately caused by Steve May's negligence.

Because the City of Chattanooga is not subject to the Tennessee workers' compensation statutes, the issue of the City's liability is governed by common law. T.C.A. 50–6–106(5). Accordingly, the City filed a pre-trial motion to dismiss the plaintiff's suit for failure to state a claim upon which relief can be granted. T.R.C.P. 12.02(6).

The trial court denied the City's motion to dismiss and the cause proceeded to trial. The trial judge, without the intervention of a jury, found for the plaintiff and awarded damages in the amount of $6,500.00.

The City of Chattanooga appealed citing error by the trial court for refusing to apply the fellow servant doctrine. In a split decision, the Court of Appeals ruled that the fellow servant doctrine was indeed applicable and dismissed the case. We granted the plaintiff permission to appeal and now reverse the judgment of the Court of Appeals.

■ The fellow servant doctrine is an exception to the common law rule of *respondeat superior,* which holds an employer liable for the torts of an employee committed within the scope of employment. *Anderson v. Covert,* 193 Tenn. 238, 245 S.W.2d 770 (1952). It provides an employer relief from liability for any injuries to an employee resulting from the negligence of a fellow worker engaged in common employment where there has been due care in selection and employment of the tortfeasor. 10 Tenn.Jur. *Employer and employee* § 30 (1983).

This common law tort defense was first pronounced by Lord Abinger of the London Court of the Exchequer in the case of *Priestley v. Fowler,* 150 Eng.Rep. 1030 (1837); *see also,* Larsen, *Workmen's Compensation Law,* § 4.30 (1990).

The facts in *Priestley, supra,* involved the employee of a butcher who suffered a fractured thigh when an improperly loaded delivery cart, driven by a fellow employee, overturned. In reversing the trial court and dismissing the employee's claim, Lord Abinger opined that "the master and the servant never can imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do himself ... [t]he servant is not bound to risk his safety in the service of his master and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself." *Priestley* at 1032–33. The Court of the Exchequer also held that allowing recovery would only encourage employees to be careless in the discharge of employment duties. "In fact," Lord Abinger wrote, "to allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on the behalf of his master, to protect him against the misconduct and or negligence of others who serve him ..." *Priestley* at 1033.

The rule was first adopted in the United States four years after *Priestley* in the case of *Murray v. South Carolina Railroad Co.,* 26 S.C.L. (1 Mc.Mul.) 385 (1841). The *Murray* case fell into relative obscurity, and the doctrine did not begin to receive wide attention until the next year when the highest court of Massachusetts published *Farwell v. Boston and Worcester Railroad Corp.,* 45 Mass. (4 Met.) 49 (1842); *See,* Comment, *The Creation of a Common Law Rule: The Fellow Servant Rule 1837–1860,* 132 U.Pa.L.R. 579 (1984).

In the Farwell case the plaintiff, a railroad engineer, lost a hand when a train jumped the track because a depot employee failed to engage the proper switch. In dismissing the plaintiff's claim, the Massachusetts court formulated the fellow servant rule more in economic terms than in social considerations. The court based the doctrine on the premise that an industry with high risk of injury offers to the employee increased wages commensurate with the increased danger. Therefore, an employee, for extra pay, assumes the risk of injury. Friedman, L. & Ladinsky, J., *Social Change and the Law of Industrial Accidents,* 67 Colum.L.Rev. 50 (1967).

Tennessee first considered the issue in 1856 in the case of *Fox v. Sandford,* 36 Tenn. (4 Sneed) 36 (1856). The *Fox* Court, in embracing the doctrine, cited the case of *Priestley v. Fowler, supra,* but felt that "[t]he reasoning by which this position is maintained need not here be reiterated, as it will be found in the cases referred to, and others there cited." 36 Tenn. (4 Sneed) at 47.

By 1858, the doctrine was considered well-settled law in Tennessee, *Goggin v. E.T. Va. R.R. Co.,* 1 Tenn.Cas. (1 Shann.) 85 (1858), and although the doctrine's harsh

result was recognized, courts were unwilling to abate the rule altogether. "If this be a hard rule to apply to these unfortunate men who, perhaps, for inadequate wages, perform so much arduous and perilous labor, and so many of whom are injured, it is still a rule too well established to be overthrown by the courts." *Nashville, Chattanooga & St. Louis Railroad Co. v. Wheless,* 78 Tenn. (10 Lea) 741, 748 (1882). Seven years later in 1889, the Court announced that the "state has gone as far as it is deemed prudent or wise to go in recognizing exceptions or modifications to the doctrine of fellow-servants, and we have no desire to extend them one step beyond the point already reached." *Louisville & N.R. Co. v. Martin,* 87 Tenn. 398, 10 S.W. 772 (1889). Despite the holding in *Martin, supra,* courts devised ways to avoid application of the doctrine and its harsh result.

Application of the fellow servant rule is dependent upon the facts presented in each case. A determination of liability necessarily turns upon careful scrutiny of the injured employee's relationship to the employer and co-workers. *Tennessee, V. & G.R. Co. v. De Armond,* 86 Tenn. 73, 5 S.W. 600, 602 (1887). As a result, courts have sometimes struggled with the facts in some cases to find ways to define the employer/employee relationship outside the scope of the doctrine. *See, Washburn v. The Nashville & Chattanooga Railroad Co.,* 40 Tenn. (3 Head) 638 (1859) (cautioning that care should be taken to apply the doctrine narrowly); *Haynes v. East Tennessee & Georgia Railroad,* 43 Tenn. (3 Cold) 222 (1866) (employer liable for the negligence of fellow employees in different departments); *Knoxville Iron Company v. Dobson,* 75 Tenn. (7 Lea) 367 (1881) (an employer may not escape liability for the negligence of vice-principal); *Virginia Iron, Coal & Coke Co. v. Hamilton,* 107 Tenn. 705, 65 S.W. 401 (1901) (employer liable for negligently failing to provide safe work place); *Memphis Steam Laundry v. Johnson,* 5 Tenn.Civ.App. (5 Higgins) 123 (1915) (an employer is liable for a co-employee's negligent performance of a nondelegable duty); *See also,* 10 Tenn.Jur. *Employer and Employee,* §§ 32–38 (1983).

Whatever viability the rule may have offered at the advent of the industrial revolution, by placing the economic costs of work related injury squarely on the shoulders of those employees injured by the negligence of co-workers, has since withered. Legislation in all fifty States has abolished the doctrine as an affirmative defense for claims brought under workers' compensation statutes. Prosser, and Keeton on Torts, Sec. 80 at 573 (5th Ed.1984). Since 1919, the doctrine in Tennessee has been limited in application solely to those employers exempt from workers compensation laws.[1] T.C.A. 50–6–111(2); *see also, Scott v. Nashville Bridge Co.,* 143 Tenn. 86, 223 S.W. 844 (1919). In this limited application, the doctrine works as an inherently unjust rule that denies a party, free of fault, the right to recover for injuries sustained through the negligence of another over whose conduct the injured party has no control, merely because of a fortuitous circumstance of employment. *Buckley v. City of New York,* 437 N.E.2d 1088 (N.Y.1982). Clearly, the fellow servant doctrine is in rigorous conflict with contemporary thought on theories of compensation for injuries occurring in the work place.

This Court has not hesitated when it became expedient and appropriate to modify aging common law principles. *See Dodson v. Shrader,* 824 S.W.2d 545, 549 (Tenn. 1992), in which we quoted Justice Hurley in *Jacob v. The State,* 22 Tenn. 372, 388, 389, 390, 3 Humphreys 514 (1842):

"The common law has been aptly called the *'lex non scripta'* because it is a rule prescribed by the common consent and agreement of the community as one applicable to its different relations, and capable of preserving the peace, good order, and harmony of society, and rendering unto everyone that which of right belongs to him. Its sources are to be

---

**1.** The fellow servant doctrine defense has been unavailable in cases falling under the Federal Employers' Liability Act since 1908. 45 U.S.C.A. § 51 et seq. (1986).

found in the usages, habits, manners, and customs of a people. Its seat [is] in the breast of the judges who are its expositors and expounders.

Such, then, is the common law, that though principles once established by judicial determination can only be changed by legislative enactment, yet such is its malleability ... that new principles may be developed, and old ones extended, by analogy, so as to embrace newly-created relations and changes produced by times and circumstances ..."

In *Buckley*, supra, the New York court elucidated the principle which we now adopt as the standard to be applied for injuries sustained in the course of employer-employee relationships in this State, where no other remedy exists:

> Logically, there appears to be little reason for denying an employee the right which a third party possesses to recover from the employer in *respondeat superior*, ... moreover, the class of persons most frequently endangered by the negligence of an employee—his fellow workers—should not, without compelling reason, be denied a remedy accorded to the general public.

The inherent injustice of a rule which denies a person, free of fault, the right to recover for injuries sustained through the negligence of another, over whose conduct he has no control merely because of the fortuitous circumstance that the other is a fellow employee, is manifest. *Poniatowski v. City of New York*, 14 N.Y.2d 76, 77, 198 N.E.2d 237, 238, 248 N.Y.S.2d 849, 850 (1964).

The fellow servant rule was created by judicial fiat and we now declare its demise. It is a rule that has largely been displaced by enactment of the Workers' Compensation statutes and under present conditions serves no useful purpose in the work place. Henceforth, the rules of negligence established by this Court in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), and by legislative enactment, shall apply.

Accordingly, the judgment of the Court of Appeals dismissing plaintiff's claim is reversed. The trial court's judgment is reinstated. Costs of appeal are taxed against the defendant.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.