Nancy S. **PEREZ**, Plaintiff–Appellant,

v.

James **McCONKEY**, d/b/a J & V Sales, Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

Feb. 28, 1994.

Charles W. Swanson, Susano, Sheppeard, Giordano, & Swanson, Knoxville, for appellant.

Jeffrey L. Cunningham, Carter, Harrod & Cunningham, Athens, for appellee.

John A. Day, Jeffrey A. Garrety, Nashville, for amicus curiae, Tennessee Trial Lawyers Ass'n.

## OPINION

ANDERSON, Justice.

In this appeal, we are asked to decide whether and to what extent the common-law doctrine of assumption of risk retains its vitality in view of our recent decision in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). There, we held that contributory negligence no longer serves as a complete bar to a plaintiff's recovery, but is to be considered in apportioning damages according to the principles of modified comparative fault so long as the plaintiff's negligence remains less than the defendant's negligence. For the reasons stated herein, we conclude that the doctrine of implied assumption of risk, as well as the terminology associated with that defense, should be abolished. Express assumption of risk is unaffected by our holding since its vitality stems from a contractual undertaking to relieve a potential defendant from any duty of care to an injured party.

## BACKGROUND

The defendant, Jamie McConkey d/b/a J & V Sales of Englewood, Tennessee, employed the plaintiff, Nancy S. Perez, as an operator of screen printing machinery which was located in the back room of another business. The back room was approximately twenty-five feet wide and thirty feet long. One component of the screen printing equipment Perez used in the discharge of her duties was a dryer which heated up to three hundred

and ten (310) degrees Fahrenheit. In addition to the excessive heat generated by the dryer, Perez testified that the printing process itself produced smoke and vapors which caused her to experience flu-like symptoms. Perez contends that on several occasions she complained to the defendant about the oppressive heat and the lack of adequate ventilation, to no avail.

On July 10, 1989, while working on a printing assignment in the back room, Perez testified she fainted and fell due to the heat and vapors. As a result of the fall, she was hospitalized for several days with heat exhaustion and a head injury, and thereafter underwent surgery.

Perez filed a common-law negligence action against the defendant-employer, McConkey,[1] alleging that inadequate ventilation resulted in conditions that rendered the work place unsafe and that, despite her persistent complaints, the defendant negligently failed to remedy the situation.

At the trial, after the plaintiff rested her proof, the defendant moved for a directed verdict, asserting the affirmative defense of implied assumption of risk. The trial court granted the directed verdict motion, finding as a matter of law, that the plaintiff had assumed the risk of the injuries she sustained. The plaintiff appealed. The Court of Appeals initially and accurately concluded that the principles of comparative fault enunciated in *McIntyre* are applicable to this case.[2] The Court then discussed the effect of our adoption of comparative fault on the common-law doctrine of assumption of risk, and quoted extensively from an analysis of the issue by Professor Carol A. Mutter contained in a law review article entitled *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee*, 57 Tenn. L.Rev. 199 (1990)[3], in the formation of their own opinion.

---

1. The plaintiff's claims against the defendant pursuant to the Workers' Compensation Act were dismissed because the defendant employed fewer than five persons and, therefore, was not subject to the Act.

2. We stated in *McIntyre* that the principle set forth therein would apply to all cases tried or retried after the date of the opinion. The opinion

was released on May 4, 1992. This case was tried on June 17, 1992; thus, the principles of comparative fault as set forth in *McIntyre* apply in this case. However, it does not appear from the record that *McIntyre* was ever called to the attention of the trial court judge.

3. Hereinafter Mutter, 57 Tenn.L.Rev. at ——.

According to that analysis,[4] there are two basic types of assumption of risk, express and implied. Express assumption of risk refers to an express release, waiver, or exculpatory clause, by which one party agrees to assume the risk of harm arising from another party's negligence. Such agreements are of a contractual nature and will generally be enforced by a court unless it is contrary to a sound public policy. *Id.* at 285. Implied assumption of risk refers to at least two different concepts, primary implied assumption of risk and secondary implied assumption of risk. Implied assumption of risk, in its primary sense, applies to bar recovery when a plaintiff has assumed known risks inherent in a particular activity, such as observing a baseball game from an unscreened seat. *Id.* at 286. In this situation, an assumption of risk defense is simply an alternative manner of stating that the plaintiff has failed to establish a cause of action, because the defendant has no duty to protect the plaintiff from the inherent risk. *Id.* Secondary implied assumption of risk applies when the plaintiff, either reasonably or unreasonably,[5] decides to encounter a known risk. When the plaintiff's decision to take the risk is unreasonable, secondary assumption of risk is indistinguishable from contributory negligence, and should only reduce, not preclude, recovery under a comparative fault analysis. *Id.* When the plaintiff's decision to encounter the risk is reasonable, the plaintiff is not negligent, but because the decision is voluntary, commentators are split as to whether a plaintiff's recovery, under comparative fault, should be precluded, reduced or unaffected. *Id.*

After considering Professor Mutter's analysis, the Court of Appeals concluded that:

Tennessee's adoption of the doctrine of comparative fault affects the principle of assumption of risk in the following ways: first, express assumption of risk or consent, such as a contract between the parties, as qualified in *Olson v. Molzen*, 558 S.W.2d 429 (Tenn.1977), remains an absolute bar to recovery by a plaintiff; second, primary assumption of risk, as when a plaintiff voluntarily assumes known risks inherent in an activity, retains its viability under comparative negligence as a complete bar to recovery; but third, under comparative fault, secondary implied assumption of risk, which is nothing more than an aspect of contributory negligence, may serve to reduce a plaintiff's damages, but not necessarily—depending on the degree of the plaintiff's negligence—preclude recovery.[6]

The Court of Appeals vacated the judgment of the trial court and remanded the matter to the trial court for proceedings in accordance with the newly adopted standard. We granted the defendant's application for permission to appeal and now modify and affirm the judgment of the Court of Appeals on the separate grounds stated below.

### HISTORICAL DEVELOPMENT

The Latin maxim *volenti non fit injuria*, which means—to one who is willing no harm is done, was often described as a synonym

---

4. We note, as Professor Mutter did in her article on page 286, that her analysis of the doctrine of implied assumption of risk is not original, but was first discussed by Professors Harper and James and has since been adopted by numerous other courts and commentators. *See e.g.* 2 Harper and James, *Law of Torts*, § 21.7, p. 1190 (1956); 4 Harper, James & Gray, *The Law of Torts*, § 21.0, at 187–90 (2d ed. 1986 and Supp. 1993) (hereinafter Harper, James & Gray, § —— at ——); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 96 (1959); 1 A, Best, *Comparative Negligence Law and Practice* § 4.20[1][b][ii] at 4–42 (1993) (hereinafter Best, § ——, at ——).

5. Secondary implied assumption of risk has been subdivided by some commentators into "unreasonable or qualified" secondary implied assumption of risk which refers to a plaintiff's decision to unreasonably encounter a risk, and which is functionally indistinguishable from contributory negligence. Mutter, 57 Tenn.L.Rev. at 285–86; Best, § 4.20[1][b][ii] at 4–42. "Reasonable, strict or pure" secondary implied assumption of risk are the labels courts and commentators have used to refer to the defense when it bars a plaintiff's recovery even though the decision to encounter the risk was reasonable. *Id.*

6. The Court of Appeals, in its holding did not distinguish between reasonable and unreasonable secondary implied assumption of risk, but stated in a footnote that because reasonable secondary implied assumption of risk would not constitute negligent conduct, it should not be considered in a comparative fault calculation.

for assumption of risk. It was originally applied in Roman–Law as a means of validating the process by which a free citizen sold himself into slavery.[7] Although the date it first appeared in recorded English case law was 1305,[8] the first notable expression of the contemporary common-law doctrine of assumption of risk has been traditionally traced to Lord Abinger's opinion in *Priestly v. Fowler*, 3 M. & W. 1, 150 Eng.Rep. 1030 (Ex.1837). There, the plaintiff, a servant of the defendant, was injured by being thrown to the ground when a "van," overloaded by another of the defendant's servants, broke down.[9] Lord Abinger denied recovery, concluding that "the plaintiff must have known as well as his master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely." *Id.*, 150 Eng.Rep. at 1033. Although Lord Abinger was addressing himself to domestic servants such as chamber maids, coachmen, and footmen, the doctrine of assumption of risk expanded and was extensively applied in master-servant cases during the ensuing industrial revolution where it was interposed to defeat countless claims of injured workers.

Inevitably, the doctrine became a part of American common law as an instrument of public policy to be applied in the American Industrial Revolution. In a refinement of the holding in *Priestly*, Chief Justice Shaw of the Supreme Judicial Court of Massachusetts in *Farwell v. Boston & Worcester RR Corp.*, 45 Mass. 49 (1842), during our nation's Industrial Revolution, found that a worker's contract of employment impliedly includes the risks of his profession. The court identified three justifications for its holding: (1) the chance of injury is reflected in compensation; (2) the employee is as likely to know of the dangers as the employer; and (3) noncompensation of injuries tends to make workers more careful. *Id.* The United States Supreme Court thereafter endorsed the doctrine in *Tuttle v. Detroit, Grand Haven &*

*Milwaukee Ry.*, 122 U.S. 189, 7 S.Ct. 1166, 30 L.Ed. 1114 (1886) as a necessary "rule of public policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business." *Id.* 122 U.S. at 196, 7 S.Ct. at 1169.

In Tennessee the doctrine of assumption of risk developed in a similar fashion. The applicable rule of law was stated in *Nashville & Chattanooga Railroad Co. v. Elliott*, 41 Tenn. 611, 616 (1860), as follows:

> The servant on entering into the service knows, or is taken to know, that there are extraordinary dangers inseparable from such a service, which human care and foresight cannot always guard against; he is not bound to incur these known perils incident to the service, and may refuse to do so, or he may, as far as can be done, provide for them, in the rate of compensation or otherwise. But if he voluntarily engages to serve, in view of all the hazards to which he will be exposed, it is well settled that, as between himself and his employer, he undertakes to run all the ordinary risks of the service....

Thereafter, this Court consistently applied the doctrine in the employer-employee context. *See e.g. Acme Box Co. v. Gregory*, 119 Tenn. 537, 105 S.W. 350 (1907); *Moore v. Chattanooga Elec. R.R.*, 119 Tenn. 710, 109 S.W. 497 (1908); *Heald v. Wallace*, 109 Tenn. 346, 71 S.W. 80 (1902); *see generally* 11 Tenn.Juris., *Employer and Employee*, § 24, Note 6 (1984 & Supp.1993).

The principal reason for the development of the doctrine was explained by the United States Supreme Court in *Tiller v. Atlantic Coast Line R. Co.*:

> Assumption of risk ... was developed in response to the general impulse of common law courts at the beginning of this period [the industrial revolution] to insulate the employer as much as possible from bearing

7. *Lyons v. Redding Const. Co.*, 83 Wash.2d 86, 515 P.2d 821, 822 (1973) (en banc).

8. Comment, *Employees' Assumption of Risk: Real or Illusory Choice?*, 52 Tenn.L.Rev. 35, 38 (1984).

9. It was also in *Priestly v. Fowler, supra,* that Lord Abinger created the fellow-servant doctrine which this Court recently abandoned in *Glass v. City of Chattanooga*, 858 S.W.2d 312 (1993).

the "human overhead" which is an inevitable part of the cost—to someone—of the doing of industrialized business. The general purpose behind the development in the common law seems to have been to give maximum freedom to expanding industry.

318 U.S. 54, 58–59, 63 S.Ct. 444, 446–47, 87 L.Ed. 610 (1943). *See also* Bohlen, *Voluntary Assumption of Risk*, 20 Harv.L.Rev. 14 (1906) (hereinafter Bohlen, 20 Harv.L.Rev. at ——.).

Irrespective of its initial impetus, the doctrine over time expanded and spread from its application in the employer-employee context, embedding itself in virtually every type of negligence law.[10] Wherever it was held to apply, the doctrine's effect was to bar any recovery by the plaintiff. The common analysis undertaken in an assumption of risk case entails consideration of three elements, actual knowledge of a danger, appreciation of the gravity of the danger, and voluntary exposure to the danger.[11] Tennessee courts have adopted this analysis. *See Haga v. Blanc & West Lumber Co.*, 666 S.W.2d 61, 65 (Tenn. 1984); *Ellithorpe v. Ford Motor Co*, 503 S.W.2d 516, 522 (Tenn.1973); *Rogers v. Garrett*, 217 Tenn. 282, 397 S.W.2d 372 (1965); *Cathcart v. Cathcart*, 719 S.W.2d 301 (Tenn. App.1986); *Baker v. Riverside Church of God*, 61 Tenn.App. 270, 453 S.W.2d 801 (1970).

### CURRENT STATUS

In contrast to its growth during the first part of this century, the doctrine of implied assumption of risk has lately been on the decline. The proliferation of Workers' Compensation Statutes in all the states and the District of Columbia have abrogated the doctrine in the very context in which it gained

acceptance with such unseemly haste.[12] Moreover in other areas of tort law, the doctrine has been a subject of controversy and confusion because, as previously discussed, the term has been used by courts to refer to at least two different legal concepts, primary and secondary implied assumption of risk, which also overlap both with the basic common-law principles of duty and with aspects of the doctrine of contributory negligence.[13]

In its primary sense, implied assumption of risk focuses not on the plaintiff's conduct in assuming the risk, but on the defendant's general duty of care.[14] The doctrine of primary implied assumption of risk "technically is not a defense, but rather a legal theory which relieves a defendant of the duty which he might otherwise owe to the plaintiff with respect to particular risks." *Armstrong v. Mailand*, 284 N.W.2d 343, 351 (Minn.1979); *see also Blackburn v. Dorta*, 348 So.2d 287, 291 (Fla.1977) ("primary assumption of risk ... is subsumed in the principle of negligence itself."). Clearly, primary implied assumption of risk is but another way of stating the conclusion that a plaintiff has failed to establish a prima facie case by failing to establish that a duty exists.

On the other hand, secondary implied assumption of risk is an affirmative defense which must be asserted by the defendant after a negligent breach of duty has been established. As Professor Mutter points out in her analysis, this type of implied assumption of risk refers to both unreasonable and reasonable conduct by the plaintiff in assuming a known risk.[15] Secondary implied assumption of risk has been further subdivided by courts and commentators into "unreasonable or qualified" secondary assumption of risk and "reasonable or strict or pure" sec-

10. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369, 372 (1985); *Mizushima v. Sunset Ranch, Inc.*, 103 Nev. 259, 737 P.2d 1158, 1160 (1987).

11. *See* D. Dobbs, R. Keeton, D. Owen, & W. Keeton, *Prosser and Keeton on the Law of Torts*, § 68, at 480 (5th ed. 1984 & Supp.1988) [hereinafter Prosser and Keeton § ——, at ——].

12. Summaries of state compensation statues are found in 4 A. Larson, *The Law of Workmen's*

*Compensation* 509 (Appendix A) (1980) and current supplements. *See e.g.* Tenn.Code Ann. § 50–6–111 (1991).

13. Prosser and Keeton, § 68 at 480; see also notes 4 & 5, *supra*.

14. Best, § 4.20[1][b][ii] at 4–41.

15. Mutter, 57 Tenn.L.Rev. at 286; *see also* Best, § 4.20[1][b][ii] at 4–42.

ondary implied assumption of risk.[16] Qualified or unreasonable secondary assumption of risk is functionally indistinguishable from contributory negligence.[17]

The confusion engendered by the overlap of the doctrine of assumption of risk with the common law concepts of duty and contributory negligence, as well as the harsh results of the defense, has resulted in criticism of the doctrine, and has led legal commentators to call for the doctrine's abrogation.[18] For example, Justice Frankfurter, in a concurring opinion in *Tiller v. Atlantic Coast Line R.R,* 318 U.S. at 68–69, 63 S.Ct. at 452, criticized the indiscriminate use of the term stating,

> [t]he phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas.

However, the greatest blow to the doctrine of implied assumption of risk has been the overwhelming acceptance and adoption by most states of comparative fault or comparative negligence principles.[19] Of the forty-five states, other than Tennessee, that apply principles of comparative fault, only five states— Georgia, Nebraska, Mississippi, Rhode Island and South Dakota—retain assumption of risk as a complete bar to recovery.[20] Ten states abolished the doctrine entirely as a separate affirmative defense before, or without any reference to, the adoption of the state's particular comparative-negligence law.[21] Ten other states by statute have abolished or subsumed the defense of assumption of risk into their comparative fault schemes.[22] The remaining nineteen states which have judicially considered the appropriate role of assumption of risk in light of a statutory or judicial adoption of comparative negligence or fault principles have also altered or abolished the common law doctrine.[23]

**16.** *Id.; see also Parker v. Redden,* 421 S.W.2d 586, 592 (Ky.1967); and Note 5, *supra.*

**17.** *See generally* Mutter, 57 Tenn.L.Rev. at 285–86; Best, § 4.20[1][b][ii] at 4–42.

**18.** *See e.g.* Harper, James & Gray, § 21.8 at 259–60; James, *Assumption of Risk: Unhappy Reincarnation,* 78 Yale L.J. 185 (1968); James, *Voluntary Assumption of Risk,* 61 Yale L.J. 141, 168–69 (1952); Bohlen, 20 Harv.L.Rev. at 91.

**19.** Only Alabama, Maryland, North Carolina and Virginia retain a common law contributory negligence scheme.

**20.** *See Parzini v. Center Chemical Co.,* 129 Ga. App. 868, 201 S.E.2d 808 (1973); *Singleton v. Wiley,* 372 So.2d 272 (Miss.1979); *Landrum v. Roddy,* 143 Neb. 934, 12 N.W.2d 82 (1943); *Kennedy v. Providence Hockey Club,* 119 R.I. 70, 376 A.2d 329 (1977); *Bartlett v. Gregg,* 92 N.W.2d 654 (S.D.1958).

**21.** *Leavitt v. Gillaspie,* 443 P.2d 61 (Alaska 1968); *Bulatao v. Kauai Motors, Ltd.,* 49 Haw. 1, 406 P.2d 887 (1965) *(see also Geldert v. State,* 3 Haw. App. 259, 649 P.2d 1165 (1982) decided after the adoption of comparative fault); *Messmer v. Ker,* 96 Idaho 75, 524 P.2d 536 (1974) *(see also Salinas v. Vierstra, supra* at Note 10, decided after the adoption of comparative fault); *Rosenau v. City of Estherville,* 199 N.W.2d 125 (Iowa 1972) (codified at Iowa Code Ann. § 619.17 (West 1987); *Parker v. Redden, supra* at Note 16; *Felgner v. Anderson,* 375 Mich. 23, 133 N.W.2d 136

(1965); *Bolduc v. Crain,* 104 N.H. 163, 181 A.2d 641 (1962); *Meistrich v. Casino Arena Attractions, Inc., supra,* at Note 4; *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1972) *(see also Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981) decided after the adoption of comparative fault); *McConville v. State Farm Mut. Auto. Ins. Co.,* 15 Wis.2d 374, 113 N.W.2d 14 (1962).

**22.** Ariz.Rev.Stat. § 12–2505 (Supp.1993); Ark. Code Ann. § 16–64–122(c) (Michie 1987); Conn. Gen.Stat.Ann. § 52–572h(c) (West Supp.1989); Ind.Code Ann. § 34–4–33–2(a) (Burns 1986); Mass.Gen.Laws Ann. ch. 231, § 85 (West 1985); N.Y.C.P.L.R. § 1411 (McKinney 1976); N.D.Cent.Code § 9–10–06 (1987); Okla.Stat.Ann. tit. 23, § 12 (West 1987); Or.Rev.Stats. § 18.-475(2) (1988); Utah Code Ann. § 78–27–37 (1987).

**23.** *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992); *Brown v. Kreuser,* 38 Colo.App. 554, 560 P.2d 105 (1977) (codified at Colo.Rev.Stat.Ann. § 13–21–111.7 (West 1988 & Supp.1993)); *Fell v. Zimath,* 575 A.2d 267 (Del.Super.1989); *Blackburn v. Dorta,* 348 So.2d 287 (Fla.1977); *Barrett v. Fritz,* 42 Ill.2d 529, 248 N.E.2d 111 (1969); *Jackson v. City of Kansas City,* 235 Kan. 278, 680 P.2d 877 (1984); *Murray v. Ramada Inns, Inc.,* 521 So.2d 1123 (La.1988); *Wilson v. Gordon,* 354 A.2d 398 (Me.1976); *Springrose v. Willmore,* 192 N.W.2d 826 (Minn. 1971) (codified at Minn.Stat.Ann. § 604.01(1a) (West 1988 & Supp.1993)); *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983) (en banc); *Kopischke*

Whether by statute or by judicial decision, those states which have tailored assumption of risk to mesh with comparative negligence or fault principles appear to follow one of three approaches. Some states have merged secondary implied assumption of risk into the comparative negligence scheme, while retaining the principle of primary implied assumption of risk as a complete bar to recovery.[24] After concluding that the situations to which both primary and secondary implied assumption of risk have been applied are just as amenable to resolution under the common law concepts of duty and comparative fault, other jurisdictions have abolished implied assumption of risk entirely, and dispensed with using assumption of risk terminology.[25] Finally, some jurisdictions have combined the doctrine of primary implied assumption of risk with the common-law concept of duty, while retaining the defense of secondary implied assumption of risk as a factor for comparison in the same manner as any plaintiff's negligence and not as a complete bar to recovery.[26]

■■■■ In spite of the diversity of opinion as to the proper role of the various categories of implied assumption of risk in a comparative negligence scheme, commentators and courts almost unanimously agree that even in a system of comparative fault, express assumption of risk should remain an absolute bar to recovery.[27] The uniformity of decision on this issue has been attributed to the fact that "express assumption of risk involves an affirmatively demonstrated, and presumably bargained upon choice by the plaintiff to relieve the defendant of his legal duty . . . ." Prosser and Keeton, § 68, at 496. Again we emphasize that express assumption of risk occurs when a party specifically agrees, prior to the time of injury, to accept a particular risk of harm resulting from another party's conduct.[28] The law of express assumption of risk is generally uniform among the states.[29] Tennessee's case law in this area is typical. Specifically, an express release, waiver, or exculpatory words by which one party agrees to assume the risk of harm arising from another party's negligent conduct will be enforced by the courts so long as it does not extend to liability for willful or gross negligence and does not otherwise offend public policy. *Crawford v. Buckner*, 839 S.W.2d 754, 759–60 (Tenn. 1992); *Olson v. Molzen*, 558 S.W.2d 429, 430 (Tenn.1977).

*v. First Continental Corp.*, 187 Mont. 471, 610 P.2d 668 (1980); *Mizushima v. Sunset Ranch, Inc., supra* at Note 10; *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 6 O.B.R. 170, 451 N.E.2d 780 (1983) (codified at Ohio Rev.Code.Ann. § 2315.-19(A)(2) (Anderson 1991); *Rutter v. Northeastern Beaver Cty. Sch. Dist.*, 496 Pa. 590, 437 A.2d 1198, 1209 (1981) (plurality opinion); *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751 (Tex.1975); *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978); *Lyons v. Redding Const. Co., supra* at Note 7 (codified at Wash.Rev.Code Ann. § 4.22.-005 (West 1988)); *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989); *Brittain v. Booth*, 601 P.2d 532 (Wyo.1979). South Carolina has not addressed the role of assumption of risk since it judicially adopted comparative negligence in *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991).

**24.** *See e.g. Knight v. Jewett, supra* at Note 24, 834 P.2d at 708; *Anderson v. Ceccardi, supra,* at Note 24, 451 N.E.2d at 783.

**25.** *See e.g. Blackburn v. Dorta, supra,* at Note 24, 348 So.2d at 292; *Salinas v. Vierstra, supra* at Note 10, 695 P.2d at 374–75; *Meistrich v. Casino Arena Attractions, Inc., supra,* at Note 4, 155 A.2d at 96; *McGrath v. American Cyanamid Co.*, 41 N.J. 272, 196 A.2d 238 (1963).

**26.** *Gustafson v. Benda, supra* at Note 24, 661 S.W.2d at 15 (adopting the Uniform Comparative Fault Act which includes in its definition of fault to be compared, "unreasonable assumption of risk not constituting an enforceable express consent" U.C.F.A. § 1(b)); *King v. Kayak Mfg. Corp., supra,* at note 24, 387 S.E.2d at 517; Ark.Code Ann. § 16–64–122 (Michie 1987); Utah Code Ann. § 78–27–38 (1987).

**27.** *See e.g.* Best, § 4.20[2][a] at 4–44; Prosser and Keeton § 68, at 480–84; Harper, James & Gray, § 21.8 at 259; Mutter, 57 Tenn.L.Rev. at 285; V. Schwartz, *Comparative Negligence,* § 9.1, at 154 (2d ed. 1986); H. Woods, *Comparative Fault,* § 6.1, at 131 (2d ed. 1987); *Blackburn v. Dorta, supra* at Note 24; *Salinas v. Vierstra, supra* at Note 10; *Wilson v. Gordon, supra* at Note 24; *Farley v. M.M. Cattle Co., supra,* at Note 24.

**28.** Best, § 4.20[1][b][ii]; Mutter, 57 Tenn.L.Rev. at 285.

**29.** Mutter, 57 Tenn.L.Rev. at 285.

### STATUS IN TENNESSEE

■ After reviewing the wealth of authorities from other jurisdictions, as well as the writings of numerous legal commentators on the subject, we join the vast majority of jurisdictions by concluding that the doctrine of implied assumption of risk no longer operates as a complete bar to recovery in Tennessee. It would be ironic indeed if, after abolishing the all-or-nothing proposition of contributory negligence in *McIntyre*, we were to reinstate it here using the vehicle of assumption of risk. However valid at the time, the policy of insulating business from human overhead, from which assumption of risk developed, now runs directly counter to modern social policy that is typified by the almost universal enactment of workmen's compensation legislation.[30]

We agree with those states that have abandoned all categories of implied assumption of risk, as well as the traditional assumption of risk terminology, in the wake of judicial or statutory adoption of a scheme of comparative fault. The types of issues raised by implied assumption of risk are readily susceptible to analysis in terms of the common-law concept of duty and the principles of comparative negligence law.

■ Under Tennessee law, no claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991). Because duty is an element of the plaintiff's prima facie case, the doctrine of primary implied assumption of risk, as an alternate expression of the concept of duty, would serve no pro-

ductive purpose; indeed it would only confuse and convolute the issues. For that reason, we decline to adopt that aspect of the thoughtful opinion of the Court of Appeals. While we agree that those situations described by commentators as involving the concept of primary implied assumption of risk will preclude recovery under a scheme of comparative fault, the same result will be obtained, without any unnecessary confusion, if Tennessee courts use the common-law concept of duty to analyze the issues.

■ Moreover, we do not consider it necessary or desirable to retain the doctrine of secondary implied assumption of risk as a separate defense. Rather, the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.[31]

The issues formerly amenable to assumption of risk analysis will inevitably arise in future negligence cases. We believe, however, that confusion and complications can be avoided if the resolution of those issues proceeds in accordance with principles of general negligence law and principles of comparative fault analysis.

We also believe that the contractually-oriented principle of express assumption of risk is unaffected by our shift from contributory negligence to comparative fault. In exercising, perhaps, an over abundance of caution, some jurisdictions have required that the term "express assumption of risk" be banished from the range of acceptable legal

**30.** *See e.g. Salinas v. Vierstra, supra* at Note 10, 695 P.2d at 374; *Williamson v. Smith, supra* at Note 22, 491 P.2d at 1150; *Rutter v. Northeastern Beaver Cty. Sch. Dist., supra* at Note 24, 437 A.2d at 1200.

**31.** *Leavitt v. Gillaspie, supra* at Note 22, 443 P.2d at 68; *Brown v. Kreuser, supra* at Note 24, 506 P.2d at 108; *Blackburn v. Dorta, supra* at Note 24, 348 So.2d at 293; *Parker v. Redden, supra* at Note 16, 421 S.W.2d at 592; *Springrose v. Willmore, supra* at Note 24, 192 N.W.2d at 828; *Kopischke v. First Continental Corp., supra* at Note 24, 610 P.2d at 687; *Meistrich v. Casino Arena Attractions, Inc., supra* at Note 4, 155 A.2d at 96; *Jacobsen Const. v. Structo–Lite Engineering*, 619 P.2d 306, 312 (Utah 1980); *Brittain v. Booth, supra* at Note 24, 601 P.2d at 534–35.

terms of art. Although we have concluded that implied assumption of risk doctrine and terminology should no longer be used, we find it unnecessary to eliminate the term "express assumption of risk", primarily because it has never been used to refer to various, distinct, and overlapping legal concepts.

### CONCLUSION

Based on the foregoing analysis, we hold that implied assumption of risk is no longer a complete bar to recovery in Tennessee. Instead the doctrine is abolished because the situations to which it applied under the former common law contributory negligence scheme are more clearly and readily amenable to analysis after *McIntyre* in terms of the common-law concept of duty and by reference to principles of comparative fault. Express assumption of risk as it existed under the former common-law contributory negligence regime is unaffected by this holding.

The principles adopted today apply to (1) all cases tried or retried after the date of this opinion, and to (2) all comparative fault cases pending on appeal in which the assumption of risk issue was raised in the trial court.

The judgment of the Court of Appeals, as modified, is affirmed. The case is remanded for a determination of the issues in this case in accordance with this Opinion. Costs of this appeal are taxed to the defendant.

REID, C.J., and DROWOTA and O'BRIEN, JJ., concur.

DAUGHTREY, JJ., not participating.