Carl SMID, Plaintiff/Appellant,

v.

ST. THOMAS HOSPITAL, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section.

June 15, 1994.

Permission to Appeal Denied by Supreme Court Sept. 6, 1994.

Helen Loftin Cornell, Nashville, for plaintiff/appellant.

Mary Martin Schaffner, Howell & Fisher, Nashville, for defendant/appellee.

### OPINION

CANTRELL, Judge.

The plaintiff, a cardiac patient, fractured his wrist when he fell over an exercise machine located on the premises of the defendant hospital, where he had been sent to participate in a cardiac rehabilitation program. The trial court found that the plaintiff had voluntarily assumed the known risk of falling and injuring himself when he stepped backwards in a room full of exercise equipment. Because there existed no genuine issue as to any material fact, the court granted summary judgment to the defendant. We affirm the judgment of the trial court, but we do so under the "duty" analysis recently adopted by our Supreme Court in *Perez v. McConkey*, 872 S.W.2d 897 (1994), rather than under the traditional defense of implied assumption of the risk, which was abolished by that opinion.

### I.

When the Supreme Court decided the case of *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), it swept away the defense of contributory negligence, replacing it with a system that allocates fault between negligent plaintiff and negligent defendant. *McIntyre* did not deal directly with assumption of the risk, another defense which can bar recovery against a negligent defendant in appropriate situations. But the court recognized that its decision had far reaching implications: "... today's decision affects numerous legal principles surrounding tort litigation. For the most part, harmonizing these principles with comparative fault must await another day." *McIntyre* at 57.

The case of *Perez v. McConkey*, 872 S.W.2d 897 (Tenn.1994), provided the opportunity to re-examine the doctrine of assumption of the risk in the light of *McIntyre*. The court discussed the development of the defense of assumption of the risk as an instrument of public policy during the American Industrial Revolution and its subsequent decline in usefulness with the proliferation of Workers Compensation statutes, concluding that it had become a source of controversy and confusion, because it had "been used by the courts to refer to at least two different legal concepts...." *McConkey* at 901 and 902.

The court narrowed the scope of the defense, finding that the concepts of duty and comparative negligence were more useful analytical tools than assumption of risk in cases where a plaintiff had acted to create or encounter a dangerous situation. The court decreed that the principles it adopted in *McConkey* apply to "(1) all cases tried or retried after the date of this opinion, and to (2) all comparative fault cases pending on appeal in which the assumption of risk issue was raised in the trial court." With that in mind, we examine the facts of this case.

### II.

The plaintiff, Carl Smid, had a serious cardiovascular blockage. After two angioplasties, his cardiologist ordered him to participate in the St. Thomas Cardiac Rehabilitation Program. Mr. Smid had participated in 31 sessions on a schedule that called for three one-hour sessions each week, before the events occurred which are described in this suit.

Arriving somewhat early at the St. Thomas facility on June 17, 1991, Mr. Smid found that the participants in a earlier exercise class were celebrating the "graduation" of a patient from their program, by eating ice cream in a room adjoining the exercise room, and that the start of Mr. Smid's exercise program would be delayed.

Mr. Smid did not want to eat ice cream, so he chose to wait in the exercise room for the scheduled program to begin. The bench in the exercise room was stacked high with mats, and there were no other seats available. Mr. Smid stood in one position for up to 65 minutes, and then, his feet starting to feel numb, he took one step backwards, contacting a set of moveable stairs which shifted

on the impact, and he lost his balance and fell, fracturing his wrist.

The plaintiff argues that there were disputes as to matters of material fact, and that therefore summary judgment was an inappropriate way to dispose of this case. See *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). However, the only account of the events of that day relied upon by the trial court in reaching judgment was contained in the deposition of Mr. Smid, no other eyewitness account being available.

What the plaintiff characterizes as facts in dispute, and alternatively as inferences to be drawn from uncontroverted facts, are his allegations that the rehabilitation program was marked by disorganization, poor supervision and scheduling, and overcrowding of the exercise facility with equipment, and that these all contributed to the accident.

Even if we take these allegations to be true, however, the plaintiff is still not entitled to prevail, whether we analyze this case under the older concept of assumption of the risk, or under the concept of lack of duty, which replaces it.

When Mr. Smid stepped backward and tripped over the movable stairs, he was not encountering an unknown or hidden risk. He was familiar with the stairs, having used them in prior exercise sessions; he knew that they were movable, having moved them himself on previous occasions; and he had seen where they were located on the day of his fall—no one had moved them from their position after he turned his back on them. Though the plaintiff states that the machine was the same color as the rug, he also acknowledges that he would have seen it if he had simply turned his head before stepping back. Under pre-*McConkey* analysis, the court was correct in finding that Mr. Smid had assumed the risk of falling and breaking his wrist by stepping backwards without looking.

■ The *McConkey* decision does not change the allocation of liability in this and similar situations, but it does change the terms of the analysis by which the result is reached. The term "Assumption of the Risk" is now reserved for situations that had previously been labeled as "Express Assumption of the Risk," referring to "express release, waiver, or exculpatory clause, by which one party agrees to assume the risk of harm arising from another party's negligence." *McConkey* at 900. Where a plaintiff has expressly assumed a risk, and such an assumption is not barred by public policy, the plaintiff may not recover his damages.

The *McConkey* court also held that the term "implied assumption of the risk," and its subdivision into primary and secondary assumption of the risk, and its further subdivision into reasonable and unreasonable secondary assumption of the risk had outlived any usefulness they may once have had:

> "[t]he confusion engendered by the overlap of the doctrine of assumption of risk with the common law concepts of duty and contributory negligence, as well as the harsh results of the defense has resulted in criticism of the doctrine, and has led legal commentators to call for the doctrine's abrogation." *McConkey* at 903.

Rather than asking whether Mr. Smid had impliedly assumed the risk of injury, we must ask instead whether the hospital had a duty to protect Mr. Smid from the risk that materialized. If the hospital did have such a duty, then the case could have been decided on principles of comparative negligence.

■ But if the hospital had no such duty, then one of the required elements to make out a case of negligence is missing, and the defendant must prevail. The question is not whether a hospital has any duty to individuals who participate in outpatient programs on its premises—of course it does. But does that duty extend to guaranteeing the safety of an individual who stands before a large piece of exercise equipment and then steps backward without looking? We think not.

We doubt that there is any product of nature or of human invention, no matter how benevolent, that a human being cannot turn into a source of injury to himself, if only he is careless enough. We believe that the defendant had no duty to protect the plaintiff from the consequences of his action, when he could have easily protected himself by simply looking where he was about to step.

## III.

We therefore affirm the judgment of the trial court. Remand this case to the trial court for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

TODD, P.J., and KOCH, J., concur.