Charles Robert BAGGETT

v.

**BEDFORD COUNTY, Tennessee.**

Court of Appeals of Tennessee,
at Nashville.

Sept. 14, 2007 Session.

Jan. 15, 2008.

Permission to Appeal Denied by
Supreme Court June 30, 2008.

William Kennerly Burger, Murfreesboro, Tennessee, for Appellant Charles R. Baggett.

Reynolds Davies and A. Chad Davidson, Nashville, Tennessee, for Appellee Bedford County.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and STEVE R. DOZIER, Sp. J., joined.

This is a comparative negligence case. The plaintiff prisoner was incarcerated at the defendant county's jail. The inmates were given an opportunity to earn a reduction in their sentences by performing construction work to expand the jail's workhouse facility. The plaintiff volunteered for this program and was assigned the task of hanging cement board on the walls of the workhouse; the jail provided the plaintiff with a scaffold and a step ladder. The plaintiff was told to hang one of the boards at a height that could not be reached by standing on the scaffold alone. To perform the task, the plaintiff put the ladder on top of the scaffold and climbed the ladder. In doing so, he lost his balance, the scaffold collapsed, and he fell to the floor, sustaining serious injuries. The plaintiff prisoner sued the county under the Governmental Tort Liability Act, seeking damages for his injuries. The county moved for summary judgment, asserting the simple tool doctrine and comparative negligence. The trial court granted the motion on both grounds. The plaintiff appeals. We reverse, finding, *inter alia*, that the simple tool doctrine is a form of assumption of the risk and, as such, has been abolished in favor of comparative negligence.

Plaintiff/Appellant Charles Robert Baggett ("Baggett") was 37 years old and had worked as a house painter. After being arrested on drug charges, he was incarcerated in the jail in Defendant/Appellee Bedford County. During Baggett's incarceration, Bedford County made the decision to expand its jail workhouse facility. To facilitate the expansion, inmates in the Bedford County jail were given the opportunity to participate in Bedford County's "workhouse program" ("the program"), under which inmates could earn a reduction in their sentences by performing manual labor to help expand the jail's workhouse facility. Participation in the program was strictly voluntary; indeed, it was competitive, with numerous inmates seeking to participate. Baggett volunteered and was allowed to take part.

As part of the program, Baggett was assigned the task of hanging cement wall panels in the workhouse. To enable Bag-

gett to perform this task, the jail provided him with a six-foot stepladder and a twelve-foot Baker scaffold.[1] In his previous work as a painter, Baggett had used Baker scaffolds. Generally, a Baker scaffold makes use of stabilizer bars that prevent the scaffold from wobbling. According to Baggett, however, the scaffold provided to him had no stabilizer bars and the screws used to hold the wood planks to the frame were missing.[2]

On March 29, 2004, Baggett and another inmate assembled the Baker scaffold for Baggett to use. Baggett had been told to hang the cement wall panels on the wall at a height of approximately twenty-five feet. The scaffold provided to Baggett was not tall enough for him to reach such a height, so he placed the folded step-ladder on top of the scaffold in order to hang the panels. Baggett climbed the ladder and began to drive a screw into the panel, to attach it to the wall. As he did so, he lost his balance and the scaffold tipped and fell. Baggett fell and hit the floor head-first. He sustained serious injuries to his face and head, including a fractured eye socket, fractured nasal cavity, fractured vertebrae, a fractured wrist, and several lacerations. Baggett was taken to Vanderbilt University Hospital, where he spent four days being treated for his injuries.

On June 7, 2004, Baggett filed a lawsuit against Bedford County under Tennessee's Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated §§ 29–20–101 through –408. In his complaint, Baggett noted that Bedford County was under a duty to provide a reasonably safe facility for his incarceration, and asserted that the County breached this duty by providing him with a defective scaffold.

In its answer, Bedford County asserted as an affirmative defense that the doctrine of comparative fault precluded Baggett from recovering for his injuries. Bedford County also maintained that it did not breach its duty to provide a reasonably safe facility. The County's answer was later amended to assert the simple tool doctrine as a defense. Discovery ensued.

In July 2006, Bedford County filed a motion for summary judgment. In the motion, the County asserted essentially two grounds. First, it argued that Baggett was precluded from recovery under the "simple tool doctrine," as stated in *Sivley v. Nixon Mining Drill Co.*, 128 Tenn. 675, 164 S.W. 772 (1913) and, more recently, *Cross v. Matheny*, No. 156, 1991 WL 50213 (Tenn.Ct.App. April 10, 1991). Second, the County argued that Baggett was precluded from recovery under the doctrine of comparative fault, as stated in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), because he was more than fifty percent at fault for his injuries. Baggett responded to the motion for summary judgment, arguing that there was a genuine issue of fact concerning whether he had any choice in performing the work that led to his injury, and that the case was inappropriate for adjudication on a summary judgment motion.

After a hearing, the trial court granted Bedford County's motion for summary judgment. The court based its decision on the simple tool doctrine and the doctrine of comparative fault, stating: "Taking the strongest legitimate view of the evidence in favor of the Plaintiff, reasonable minds cannot differ upon the legal conclusion that the fault of the Plaintiff was at least equal

---

1. A Baker scaffold is a scaffold made of two stacked metal sections with wooden planks that connect to the frame to provide a platform on which to stand and work.

2. One of the workhouse program supervisors, Steven Duvall, later said that he was not sure whether the scaffold had stabilizer bars.

to that of the Defendant." Baggett now appeals this order.

On appeal, Baggett raises the following issues: (1) whether the trial court erred in applying the simple tool doctrine; (2) whether the trial court erred in its analysis of the parties' comparative fault; and (3) whether the trial court erred in failing to find a genuine issue of material fact.

■ Summary judgment should be granted only if the moving party establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgment is proper when "both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn.1993)). We review the trial court's grant of Bedford County's motion for summary judgment *de novo* on the record. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). As there are only questions of law involved, we accord no presumption of correctness to the trial court's decision. *Id.*

We first address the simple tool doctrine. The simple tool doctrine has been articulated as follows:

> . . . [I]t is the duty of the master [employer] to furnish tools reasonably safe, yet if they are of the simple character indicated, and a casual inspection would disclose the defect in them subsequently complained of, and to which the injury is attributable, the servant [employee] is charged with notice of what he could have observed by such attention, and is held to have *assumed the risk* thereof; his opportunity of observation being equal to that of the master, and the tool being of such a character that no skill would be required to observe its condition. . . .

*Southern Ry. Co. v. Hensley*, 138 Tenn. 408, 198 S.W. 252, 253 (1917) (emphasis added). Simple tools have been described as tools "of a simple nature, easily understood and comprehended, and the defects in them can be readily observed by a person of ordinary intelligence." 27 Am. Jur.2d *Employment Relationship* § 260 (2004). The simple tool doctrine was adopted in Tennessee in 1913 in the case of *Sivley v. Nixon Mining Drill Co.*, 128 Tenn. 675, 164 S.W. 772 (1913). In *Sivley*, the tool at issue was a ladder, which was held to be a "simple tool." The Tennessee Supreme Court held that the employer could not be held liable for an injury caused by a defect in the ladder because "a defect in such a simple tool must be obvious to its user, by whom *any risk of danger therefrom must be held to be assumed.*" *Sivley*, 164 S.W. at 772 (emphasis added).

Soon after its decision in *Sivley*, the Tennessee Supreme Court refined its application of the simple tool doctrine in *Philip Carey Roofing & Mfg. Co. v. Black*, 129 Tenn. 30, 164 S.W. 1183 (1914). In *Philip Carey*, the court held that the simple tool doctrine did not apply where the employer's knowledge of a defect in the tool (again, a ladder) was superior to the employee's knowledge of the defect. *Philip Carey*, 164 S.W. at 1185. It noted that the simple tool doctrine rests on the presumption that the master (employer) and the servant (employee) had equal knowledge, and observed that "[s]uch a presumption cannot be indulged where the master has actual notice of a defect." *Id.* at 1184–85.

■ In explaining the simple tool doctrine, these Tennessee courts refer expressly to assumption of the risk and make it clear that the simple tool doctrine had its provenance in the common law doctrine

of implied assumption of the risk.[3] As with the simple tool doctrine, assumption of the risk originated in the employer/employee (or "master/servant") context. *See Perez v. McConkey,* 872 S.W.2d 897, 901 (Tenn.1994). The doctrine of implied assumption of risk has been stated as follows:

> The servant on entering into the service knows, or is taken to know, that there are extraordinary dangers inseparable from such a service, which human care and foresight cannot always guard against; he is not bound to incur these known perils incident to the service, and may refuse to do so, or he may, as far as can be done, provide for them, in the rate of compensation or otherwise. But if he voluntarily engages to serve, in view of all the hazards to which he will be exposed, it is well settled that, as between himself and his employer, he undertakes to run all the ordinary risks of the service. . . .

*Nashville & Chattanooga R.R. Co. v. Elliott,* 41 Tenn. 611, 616 (1860), *quoted in Perez,* 872 S.W.2d at 901. Generally, there are three elements of assumption of risk: "actual knowledge of a danger, appreciation of the gravity of the danger, and voluntary exposure to the danger." *Perez,* 872 S.W.2d at 902. As with the simple tool doctrine, where assumption of risk is applicable it bars any recovery by the plaintiff. *Id.*

The Tennessee Supreme Court abolished the defense of implied assumption of risk in *Perez,* 872 S.W.2d at 905. The Court analyzed the concepts of primary implied assumption of risk and secondary implied assumption of risk. *Id.* at 902. Ultimately, however, in light of the adoption of comparative negligence, the Court decided to abandon all categories of implied assumption of risk:

> We agree with those states that have abandoned all categories of implied assumption of risk, as well as the traditional assumption of risk terminology, in the wake of judicial or statutory adoption of a scheme of comparative fault. The types of issues raised by implied assumption of risk are readily susceptible to analysis in terms of the common-law concept of duty and the principles of comparative negligence law.

*Id.* at 905. The *Perez* Court could foresee issues amenable to assumption of risk analysis arising in future negligence cases, and said that resolution of such issues should "proceed [ ] in accordance with principles of general negligence law and principles of comparative fault analysis." *Id.*

■ The simple tool doctrine is clearly grounded in the principle of implied assumption of risk, unequivocally abolished in *Perez.* Because the simple tool doctrine is a variation of assumption of risk, we hold that it too must be considered abolished in favor of comparative negligence. Therefore, we must conclude that the trial court erred to the extent that it relied on the simple tool doctrine in granting Bedford County's motion for summary judgment.[4]

---

3. Implied assumption of the risk is contrasted with express assumption of the risk, which is "an express release, waiver or exculpatory clause, by which one party agrees to assume the risk of harm arising from another party's negligence." *Perez v. McConkey,* 872 S.W.2d 897, 900 (Tenn.1994). Express assumption of the risk is of a contractual nature. *Id.* It is not involved in this appeal.

4. We note that other jurisdictions have retained the simple tool doctrine after abolishing assumption of risk in some forms. Those cases are distinguishable from the present, however, in that Tennessee has abolished implied assumption of risk in *all* forms. *See Allen Gravel Co. v. Yarbrough,* 133 Miss. 652, 98 So. 117, 118 (1923) (recognizing the Mississippi legislature's abolishment of only sec-

In this case, the trial court's grant of summary judgment was based on both the simple tool doctrine and Baggett's comparative fault in causing his injury. Consequently, we must also address the issue of comparative fault. In reviewing the trial court's decision, we must take the strongest legitimate view of the evidence in favor of Baggett, the nonmoving party, and allow all reasonable inferences in his favor. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). We note that Bedford County concedes that it owed a duty to Baggett to provide him with a reasonably safe facility in which to work.

While Baggett acknowledges that participation in the workhouse program was voluntary, he argues that the circumstances were nevertheless coercive, in that Baggett was an inmate and the benefits offered to the inmates, i.e., reduction in their sentence, were highly prized.[5] He also argues that Bedford County furnished equipment not appropriate for hanging wall panels at a twenty-five foot height, and that the equipment offered—the Baker scaffold—was missing stabilizer bars and was thus defective.

Bedford County maintains that, because participation in the workhouse program was voluntary, Baggett's status as an inmate need not be considered. It asserts that Baggett must be deemed at least fifty percent at fault in causing his injuries because he was aware of the defective condition of the scaffold and nevertheless proceeded. Bedford County's argument in this case bears some resemblance to the

argument put forth by the defendant in *McWherter v. JACOA Alcoholism Ctr.,* No. W2006–01629–COA–R3–CV, 2007 WL 2155738, at *6 (Tenn.Ct.App. July 27, 2007).

In *McWherter,* the defendant was a treatment facility for drug and alcohol addictions. The plaintiff was an inpatient at the facility, admitted on referral from her probation officer. As part of her therapy, the plaintiff participated in an exercise known as the "rope exercise," and the plaintiff was twice tossed over the rope onto a mattress as part of the exercise. On the second toss, the plaintiff was injured, and she sued the treatment facility. The defendant treatment facility noted that the plaintiff was a voluntary inpatient at the facility, and argued that it was entitled to summary judgment because the plaintiff, by allowing herself to be tossed over the rope, voluntarily confronted an obvious risk of injury. *Id.* This Court observed that the argument of the defendant treatment facility "addresses only the fault attributable to [the plaintiff]. It veers dangerously close to the 'implied assumption of the risk' doctrine which, after Tennessee's adoption of comparative fault, was abolished as a complete bar to recovery." *Id.* (footnotes and citations omitted). The *McWherter* Court quoted the following admonition in *Perez:*

> [T]he reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent

---

ondary implied assumption of risk, the effect of which was to preclude employers from asserting implied assumption of risk as an affirmative defense once the plaintiff employer established duty and breach); *Maher v. Wagner,* 62 S.D. 227, 252 N.W. 647, 648 (1934) (holding that South Dakota's workers' compensation law abolished only one form of implied assumption of risk.)

5. Baggett cites *Cannon v. Loudon County,* 199 S.W.3d 239 (Tenn.Ct.App.2005), where an inmate was injured when he slipped on a floor he knew was wet. We find *Cannon* inapposite because the appellate court emphasized that the inmate had no choice but to encounter the risk. *Id.* at 245.

person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

*Id.* at *7 (quoting *Perez*, 872 S.W.2d at 905). We emphasized that the trial court was compelled to view the facts in the light most favorable to the plaintiff, including the facts supporting the plaintiff's contention that she felt compelled to participate in the rope exercise. *Id.* at *7. We concluded that the trial court had erred in granting summary judgment in favor of the defendant treatment facility. *Id.* at *8.

Likewise, in this case, Bedford County's argument considers only the fault attributable to Baggett and "veers dangerously close to the 'implied assumption of the risk' doctrine...." *Id.* at *6. Certainly we must consider the facts that participation in Bedford County's workhouse program was voluntary, that Baggett had some past experience with Baker scaffolds, that he was aware that the Baker scaffold was without stabilizer bars, and that a ladder placed on top of the scaffold would be unstable. We must, however, consider all of the surrounding circumstances, including the facts that Baggett was an inmate; that the benefit of partici-

pating in the workhouse program was a reduction in his sentence; that Bedford County supplied the Baker scaffold and the ladder; that the scaffold provided was without stabilizer bars and its platform was not properly secured; that the scaffold provided was not tall enough to hang the upper wall panels; and that, accordingly, the only way Baggett could have performed the assigned task was to place the ladder on top of the scaffold and then climb the ladder. Viewing the evidence in the light most favorable to Baggett, we think that reasonable minds could differ over whether the fault attributable to Baggett was equal to the fault potentially attributable to Bedford County. Therefore, we must conclude that the trial court's grant of Bedford County's motion for summary judgment was in error. Accordingly, we reverse.

The decision of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are taxed to Appellee Bedford County, for which execution may issue, if necessary.