IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2007 Session

**TERESA McWHERTER**
**v.**
**JACOA ALCOHOLISM CENTER**

**An Appeal from the Circuit Court for Madison County**
**No. C04-100    Roy B. Morgan, Jr., Judge**

---

**No. W2006-01629-COA-R3-CV - Filed July 27, 2007**

---

This is a negligence case. The defendant is a treatment facility for drug and alcohol addictions. The plaintiff was an inpatient at the defendant facility, undergoing substance abuse treatment. The plaintiff was admitted on referral from her probation officer. As part of her treatment, the plaintiff participated in experiential therapy designed to teach through experiences. For one exercise, a group of patients were organized into a team and a rope was tied between two posts, with a mattress on one side. The team was asked to devise a plan for getting all team members over the rope, without touching it. The plaintiff's team decided to "toss" the female members of the team over the rope. The plaintiff was thrown over the rope once without injury. However, the team had to repeat the exercise. During the second attempt, the plaintiff was tossed over the rope, but this time her foot missed the mattress and she broke her ankle. The plaintiff then filed this lawsuit against the defendant facility. The facility moved for summary judgment, arguing that it could not be held liable because the plaintiff voluntarily chose to engage in the exercise despite an obvious risk of injury. The trial court granted the motion. The plaintiff now appeals. We reverse and remand, finding that the defendant facility had a duty of care to the plaintiff and that there is a genuine issue of material fact as to the extent to which the plaintiff felt compelled to participate in the exercise and as to whether the fault attributable to the plaintiff is greater than the fault attributable to the defendant facility.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Mark L. Agee and Gregory W. Minton, Trenton, Tennessee, for appellant, Teresa McWherter.

John S. Little and Matt S. Shepherd, Jackson, Tennessee, for appellee, JACOA Alcoholism Center.

**OPINION**

Plaintiff/Appellant Teresa McWherter ("McWherter") was arrested for illegal drug use. Her probation officer referred her to Defendant/Appellee JACOA Alcoholism Center ("JACOA"), a treatment facility for persons with drug and alcohol addictions. McWherter enrolled in an inpatient program at JACOA.

As part of its treatment program, JACOA offers various types of experiential therapy, i.e., physical activities designed to teach participants responsibility through real-life experiences. One such activity is called the "rope exercise." In this exercise, a rope is tied approximately "chest high" between two four-by-four posts that stand approximately 12 to 15 feet apart. A twin-bed size mattress is placed on the ground on one side of the rope. Participants in the exercise are grouped in a team and asked to devise and carry out a plan for getting all team members over the rope without touching the rope. If any of the team members touch the rope during the exercise, then the team must start over.

On September 23, 2003, McWherter participated in the rope exercise with a team of other JACOA patients. The exercise was monitored by Jeff Riley ("Riley"), the treatment director for JACOA at the time. As the treatment director monitoring the exercise, Riley let the team decide how to get everyone over the rope, so long as the plan was not obviously dangerous. McWherter's team devised a plan in which the female members of the team would be "tossed" over the rope. During the team's first attempt, McWherter cleared the rope without injury. In this attempt, however, the last two team members touched the rope, so the team had to start over. During the second attempt, McWherter was again tossed over the rope. This time, McWherter's foot missed the mattress and she broke her right ankle.

On March 22, 2004, McWherter filed a personal injury suit against JACOA, seeking damages up to $150,000. In her complaint, McWherter alleged that JACOA acted negligently in requiring her to participate in the "rope exercise" and that JACOA's negligence proximately caused her to suffer painful and disabling injuries. In an answer filed on May 12, 2004, JACOA admitted that McWherter sustained an injury during the rope exercise, but denied that McWherter was required to participate in the exercise or that it acted negligently. Discovery ensued.

Subsequently, on August 25, 2005, JACOA filed a motion for summary judgment, attaching excerpts from the depositions of McWherter and Riley. JACOA made three arguments in support of its motion. First, JACOA asserted that the risks associated with the rope exercise were open and obvious and that McWherter voluntarily chose to confront those risks. In light of that, JACOA contended that it breached no duty of care owed to McWherter. JACOA also maintained that it had no duty to warn McWherter. In the alternative, even if it had such a duty to warn, JACOA noted that McWherter had testified in her deposition that the treatment director, Riley, had warned the team that the method they chose was dangerous. Thus, JACOA argued, it adequately warned McWherter of the dangers posed by the team's plan. Finally, JACOA noted that McWherter admitted in her

deposition that she was equally at fault for her injury. JACOA maintained that McWherter's admission of equal fault barred her from any recovery.

McWherter filed a response to JACOA's motion on October 25, 2005. In her response, McWherter appeared to change her theory of negligence, arguing that JACOA owed her a professional duty of care similar to that owed by a hospital or physician to a patient. She later conceded that this was an ordinary negligence case and that she was not alleging that JACOA violated a professional standard of care. McWherter argued, however, that JACOA controlled the therapy and daily activities for its patients and that, as a result, JACOA owed her a duty of reasonable care in supervising her treatment. McWherter contended that the issue of whether JACOA had breached its duty of care to McWherter was a question of fact for the jury to decide. In addition, McWherter disputed whether she "voluntarily" participated in the rope exercise, "especially given the fact that [she] was referred for inpatient treatment by her probation officer and the fact that [she] signed forms agreeing to participate in treatment or risk being dismissed."[1] Thus, McWherter asserted that the issue of whether she confronted the risks associated with the rope exercise voluntarily was a question of fact for the jury to decide. Finally, McWherter argued that, despite her "admission" of equal fault, reasonable minds could differ on the ultimate allocation of fault in view of all of the evidence.

The trial court held a hearing on JACOA's motion for summary judgment on June 23, 2006. Following arguments from counsel, the trial court issued a ruling from the bench, stating:

> It being acknowledged that this is not a professional negligence case, the Court has to consider that in making the ruling today based upon what's been submitted on the Motion for Summary Judgment . . . . I'm looking to a situation as to the undisputed facts that the Plaintiff chose the method as to how to get over this rope. There's no hidden dangers. She'd been over the rope once.
> Under the facts of this case as I see it, I just cannot see where I should deny the Motion for Summary Judgment. I cannot find where there would be a material question of fact that needed to be submitted to the jury at this point in time. I'm going to grant the Motion . . . for the reasons stated. The Court finds no material question of fact disputed . . . , and I'm going to grant [the Motion] based upon the record.

Thus, the trial court granted summary judgment in favor of JACOA, finding from the undisputed facts that McWherter chose the method of clearing the rope, and that the exercise presented no

---

[1]The record does not contain a copy of any form or statement to this effect. For this proposition, McWherter relied on deposition testimony from Riley and from a drug counselor for JACOA. The testimony indicates that patients are required to sign a form or statement that lists the rules by which patients must abide during treatment. Riley acknowledged that patients sign a form listing "client rights" and that "[t]here are certain rules [the patients] have to follow that might affect their treatment and [that] could even cause them to be terminated from treatment." He did not, however, explicitly state that McWherter, or any of the patients at JACOA, signed forms agreeing to participate in the treatment activities or risk being terminated.

"hidden dangers," noting that McWherter had "been over the rope once" before. On June 27, 2006, the trial court entered a final order consistent with its oral ruling. From this order, McWherter now appeals.

On appeal, McWherter asks this Court to review whether the trial court erred in finding that there were no genuine issues of material fact and that JACOA was entitled to judgment as a matter of law. In response, JACOA contends that the trial court was correct, and that it did not owe a duty of care to McWherter. It also specifically asks this Court to consider whether McWherter's admission of equal fault bars her from recovery.[2]

A motion for summary judgment should be granted when the moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). As such, summary judgment is only appropriate where the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists for trial. *Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 144 (Tenn. Ct. App. 1998). Once this is shown, the non-moving party "must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

The trial court's decision to grant a motion for summary judgment presents a pure question of law. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Thus, our review of a summary judgment decision is *de novo* upon the record and no presumption of correctness is accorded the conclusions of the lower court. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In reviewing the record, we "view the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In considering such a motion, if the court "entertains any doubt whether or not a genuine issue exists as to any material fact," *Poore v. Magnavox Co.*, 666 S.W.2d 48, 49 (Tenn. 1984), or "any doubt as to the conclusions to be drawn from that fact," *Byrd*, 847 S.W.2d at 211, then the motion must be denied.

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct that falls below the applicable standard of care, amounting to a breach of that duty; (3) an injury or loss; (4) cause-in-fact; and (5) proximate causation. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). The focus in this appeal is on the first two elements, namely,

---

[2]JACOA also asks this Court to review whether it had a separate "duty to warn" McWherter of the dangers posed by the team's chosen plan of action. We decline to do so; McWherter did not allege in her complaint that JACOA had a separate duty to warn, nor has she argued this theory of negligence in either the proceedings below or in this appeal. Therefore, for us to address this issue would amount to giving an advisory opinion. *See, e.g., State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn. 2000) (noting that courts are not to render advisory opinions).

JACOA's duty of care to McWherter, if any, and whether its conduct breached any such duty. We consider first JACOA's "duty of care."

As stated by the Tennessee Supreme Court, "[a]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Burroughs v. Magee*, 118 S.W.3d 323, 328 (Tenn. 2003) (citing *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)). The element of "duty" involves a "legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). Simply stated, a duty of care arises where a defendant's act or omission creates a risk of harm that is both foreseeable and unreasonable. *McCall*, 913 S.W.2d at 153. "[A] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *Doe*, 845 S.W.2d at 177; *see also Tedder v. Raskin*, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987). To determine whether a risk is unreasonable, courts of this state employ a balancing approach. *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005). A risk is unreasonable " 'if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.' " *Id.* (quoting *Burroughs*, 118 S.W.3d at 329).

As to this issue, JACOA argues that it did not owe a duty of care to McWherter and that the trial court correctly found that McWherter's claim failed as a matter of law. JACOA emphasizes that this case involves ordinary negligence, not professional malpractice, and argues that, in the absence of expert proof on the standard of care applicable to administering experiential therapies,[3] it cannot be established that JACOA had any legal obligation to protect McWherter from the risks associated with the "rope exercise."

The duty to exercise ordinary and reasonable care must be considered "in light of the surrounding circumstances. . . ." *Becksfort v. Jackson*, No. 02A01-9502-CV-00027, 1996 WL 208786, at *3 (Tenn. Ct. App. Apr. 30, 1996). The existence and scope of the duty in a given situation can depend on the surrounding circumstances. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994); *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003). Thus, we consider the existence of JACOA's duty in light of the relevant circumstances.

We must note that this was not a situation in which several friends simply met in a park and decided to play a game of tossing members of the group over a rope, with Riley observing at a distance. It was a therapy exercise at an addiction treatment facility utilizing physical activity, assigned by Riley as the treatment director. Riley testified about his role in this particular exercise; he assigned the task to the group of patients at the facility, but did not give them instructions on how

---

[3]Professional malpractice claims generally require expert testimony on every element of the tort, including the applicable standard of care. T.C.A. § 29-26-115; *see, e.g.*, *Phares v. Myatt*, 1998 WL 313401, No. 01-A-01-9709-CV00485, at *3 (Tenn. Ct. App. June 12, 1998) ("To establish such a claim, the plaintiff must be prepared to offer competent testimony as to the recognized standard of acceptable practice in the profession.").

to get the team members over the rope. Riley explained, "You want them to be responsible for making some of the decisions in the game." He added, however, that "if I see anything that is blatantly dangerous, I'll stop it." Riley participated in the exercise by watching to see whether any team member touched the rope. Thus, JACOA assigned the exercise and, to some extent, monitored and controlled the group members' participation.

In addition to considering the extent to which JACOA controlled the group's activities, to evaluate the existence of a duty, we also look at the foreseeability of the risk:

> Thus, legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm.
>
> The risk involved must be one which is foreseeable. . . . 'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'

*West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005) (quoting *Tedder*, 728 S.W.2d at 348). The record included evidence on the foreseeability of harm and JACOA's ability to either intervene to stop the exercise or assign an alternative exercise. Indeed, JACOA argues that the risk of harm was "open and obvious" to McWherter. If so, it was at least as obvious to Riley, who had observed many treatment groups participating in the rope exercise and similar exercises. Riley testified that some minor injuries had occurred with prior groups in the rope exercise: "there's people who have jammed an ankle, little crick in their back, or something like that, but nothing major." Thus, from prior experience, Riley was aware of some risk of injury. Moreover, as noted above, Riley said that, as treatment director, "if I see anything that is blatantly dangerous, I'll stop it." In addition, Riley testified that the rope exercise was one of many experiential therapeutic physical exercises used by JACOA, indicating that another exercise could have been assigned to McWherter's group instead of the rope exercise.

Under all of these circumstances, we must conclude that JACOA had a duty to McWherter to use reasonable care in assigning and monitoring the rope exercise utilized in its addiction treatment program.

Turning to the second element, we must determine if a genuine dispute exists as to whether JACOA failed to exercise reasonable care and thus breached the duty of care owed to McWherter:

> Once it is determined that defendant owed plaintiff a legal obligation to conform to a reasonable person standard of conduct, i.e., a duty – the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty. 'What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.'

-6-

*McCall*, 913 S.W.2d at 153 (quoting W. Keeton, Prosser and Keeton on the Law of Torts, § 356 (5th ed. 1984)).

McWherter asserts that this is a question for the jury to decide. She argues that, considering all of the surrounding circumstances, a jury could conclude that JACOA failed to act with reasonable care in permitting the group of patients to throw members of the group over a rope tied approximately "chest high" in the air. In response, JACOA maintains that it breached no duty of care to McWherter because, by allowing herself to be tossed over the rope twice, she "voluntarily" confronted an obvious risk of injury.

We first note that the question of whether JACOA acted with reasonable care must be considered in context. A fundamental principle of negligence law is that the standard of reasonable care "must be given meaning in relation to the circumstances." *Becksfort*, 1996 WL 208786, at *3 (citing *Doe*, 845 S.W.2d at 178). The surrounding circumstances dictate the degree of care owed in a given situation, and "some locations and circumstances may require a higher degree of care than others." *Id.* (citing *White v. Metro. Gov't of Nashville and Davidson County*, 860 S.W.2d 49, 51 (Tenn. Ct. App. 1993)).

JACOA argues that, even if it had a duty to McWherter, there was no breach of that duty. However, based on the record, we find that there is a genuine issue as to whether JACOA breached its duty of care to McWherter. It assigned the rope exercise to the group, chose the rope exercise instead of another therapeutic exercise and, after hearing the plan chosen by McWherter's team to get the team members over the rope, chose not to intervene. Considering these circumstances in the light most favorable to McWherter, we think that reasonable minds could differ on the issue of whether JACOA acted with reasonable care.

Nonetheless, JACOA contends that it is entitled to judgment as a matter of law because McWherter, by allowing herself to be tossed over the rope, "voluntarily" confronted an obvious risk of injury. JACOA maintains that its role was simply to "facilitate" the rope exercise. Indeed, McWherter's knowledge of the risk was relied on heavily by the trial judge in his grant of summary judgment, who correctly commented that McWherter had already "been over the rope once." JACOA's argument addresses only the fault attributable to McWherter. It veers dangerously close to the "implied assumption of the risk" doctrine which, after Tennessee's adoption of comparative fault,[4] was abolished as a complete bar to recovery. *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994). In *Perez*, the Court stated that, "It would be ironic indeed if, after abolishing the all-or-nothing proposition of contributory negligence in *McIntyre*, we were to reinstate it here using the vehicle of assumption of risk." *Id.* at 905. Accordingly, the Court decided not to retain the doctrine as a separate defense, and it specifically instructed that:

---

[4]In *McIntyre v. Balentine*, the Tennessee Supreme Court adopted a system of modified comparative fault. 833 S.W.2d 52, 57 (Tenn. 1992). Under this system, a plaintiff can recover so long as the fault attributable to the plaintiff is less—less than fifty percent (50%)—than that attributable to the defendant. *Id.* The amount of damages recoverable is reduced to reflect the percentage of fault, if any, that is attributable to the plaintiff. *Id.*

[T]he reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

*Id.* Since *Perez v. McConkey*, therefore, the doctrine of implied assumption of the risk is no longer a complete bar to recovery; rather, the principles of the doctrine are to be considered by the jury in apportioning fault. *See, e.g., Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994).

In the case at bar, JACOA is essentially urging this Court to conclude, as a matter of law, either that McWherter is solely at fault for her injury or that McWherter's fault exceeds the fault attributable to JACOA, thus precluding recovery. However, in evaluating a grant of summary judgment, we are obligated to "view the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in the nonmoving party's favor." *Staples*, 15 S.W.3d at 89.

The record in this case reflects a genuine dispute of fact concerning the degree to which McWherter felt compelled under the circumstances to participate in the rope exercise. It is undisputed that McWherter enrolled in JACOA's inpatient program subsequent to being arrested and upon referral from her probation officer. During her deposition, McWherter said: "I just thought I had to [participate in the rope exercise] because we signed papers when we went in, and they made it real clear if we didn't act right and we didn't do every activity, we would be automatically dismissed." When questioned about whether she second-guessed her decision to be tossed over the rope, McWherter responded:

Maybe I should have, but I just didn't because I trusted Jeff [Riley] at this point because he had just helped me. You know, I had been following him. He told me to do other things and activities and writings. And I didn't trust him, and I did it anyway, and it worked for me . . . I know I maybe should have, but . . . I wanted to be a part of [it] because things were working for me, and what he had told me about other things had helped me, and I trusted him at this point.

Moreover, as noted above, the record includes evidence regarding the degree of control JACOA exercised. JACOA is a treatment facility, and the rope exercise was assigned as part of its treatment program. Riley had seen the exercise used numerous times and indicated that his role included stopping the group if the method chosen to get over the rope was "blatantly dangerous." The trier of fact, in apportioning fault, may ultimately find that McWherter's fault exceeded the fault potentially attributable to JACOA; however, we decline to conclude this as a matter of law.

Finally, JACOA also contends that McWherter is precluded from recovery of damages by her admission in her deposition that she and Riley, JACOA's treatment director, "bear equal responsibility" for McWherter's accident. We find that, while McWherter's admission may be used

against her at trial, it does not bar her from recovery as a matter of law. The task of allocating fault is for the trier of fact, except where reasonable minds could not differ that the plaintiff's fault is equal to or greater than the defendant's fault. *Staples*, 15 S.W.3d at 91-92.

Therefore, in sum, we find that JACOA owed McWherter a duty to use reasonable care in assigning and monitoring the rope exercise as part of its treatment program. We also find that genuine issues of material fact remain as to whether JACOA acted unreasonably under the circumstances, as to the extent to which McWherter felt compelled to participate in the exercise, and as to whether any fault attributable to McWherter is greater than the fault potentially attributable to JACOA. Accordingly, we must conclude that the trial court erred in granting summary judgment in favor of JACOA.

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this Opinion. The costs of this appeal are to be taxed to Defendant/Appellee JACOA Alcoholism Center, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE