# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 22, 2010 Session

## WILLIAM W. REED v. BILL MCDANIEL and AHMAD ELSEBAE

### Direct Appeal from the Circuit Court for Madison County
### No. C 07-166 Div. I    Roy B. Morgan, Jr., Judge

### No. W2009-01348-COA-R3-CV - Filed February 23, 2010

This is a premises liability case. Plaintiff/Appellant sustained injuries after a fall through the second-story floor of a water-damaged building. The trial court granted summary judgment in favor of the Defendants/Appellees, finding that the danger was open and obvious, that Defendants/Appellees had warned of the danger, and that Plaintiff/Appellant was at least 50% at fault for his own injuries, thus negating his negligence claim under *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992). Finding no error, we affirm.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Art D. Wells, Jackson, Tennessee, for the appellant, William W. Reed.

Roger A. Staton, Jackson, Tennessee, for the appellee, Bill McDaniel.

Christopher H. Crain, Jackson, Tennessee, for the appellee, Ahmed Elsebae.

### OPINION

The property where the injury occurred is located at 586 Airways Boulevard in Jackson, Tennessee (the "Property"). The Property, which was purchased by Appellee Ahmed Elsebae sometime around January 2004, consists of approximately 3.7 acres of land with several buildings on it. At the time of the accident, in May 2006, one of the buildings housed three businesses–Bill's Mini-Mart (which was owned and operated by Mr. Elsebae), a battery business, and Appellee Bill McDaniel's billiard and pool cue business. Mr. McDaniel's business was located in the easternmost part of the building. In addition to the building that housed these three businesses, there was a large storage building, which Mr.

McDaniel used to store personal property. It appears from the record that Mr. McDaniel did not, in fact, rent the storage building from Mr. Elsebae; and there is some indication that, prior to the accident, Mr. Elsebae had asked Mr. McDaniel to remove his personal property from the storage building. The record indicates that the storage building was in disrepair because the roof had leaked for approximately ten years. Prior to the accident, Mr. McDaniel, or his employees, had built a metal funnel to divert falling rainwater out of a second story window. Mr. McDaniel testified that, standing on the first floor of the building, one could see through the second-story floor to the roof in several places. Mr. McDaniel claims that it was his habit to warn everyone he escorted into the building, including Mr. Reed, about the dangerous condition of the storage building's second floor.

The accident giving rise to this appeal occurred on May 23, 2006. Appellant William W. Reed had purchased some personal property from Mr. McDaniel, which was kept in the storage building, some of which was located on the second floor. The only way to access the second floor of the storage building was through a door on the north side of the building, and Mr. McDaniel held the only key to this door. Prior to the accident, Mr. McDaniel and Mr. Reed had gone into the storage building to look at the personal property Mr. Reed was interested in buying. In his deposition, Mr. Reed testified that he observed "bad flooring," that the "lighting was bad," and that the "building had leaked." Mr. Reed stated that he had seen a five-gallon bucket that was positioned to catch rainwater, and that this bucket was full. Mr. Reed admitted that the farther east he went inside the building's second floor, the worse the structure got. After observing the conditions of the second floor, Mr. Reed stated that he knew to be "real careful because something [was] leaking." After viewing the personal property, Mr. Reed left the Property and returned the following day with two helpers, Charlie and Willie. Mr. McDaniel had indicated that, whatever personal property Mr. Reed did not wish to purchase, he would give to Charlie just to have it cleared from the Property. When Mr. Reed and his helpers returned to the Property, Mr. McDaniel was not present. Mr. Reed testified that he made three or four trips to haul away the "stuff" from the upstairs area and that, on one of those trips, he decided to walk around the upstairs area to look for some bed rails for a bed he had purchased. While searching for the bed rails, Mr. Reed testified that he went farther into the room "back south on the west end." As he made his way into this area, Mr. Reed admitted that the structure worsened because "the building had leaked for a long time." Moreover, Mr. Reed indicated that the "lighting was bad" in this area and that he had to use a flashlight to see. Mr. Reed, who is 6' 1" tall and weighed approximately 250 pounds, allegedly fell partially through the second story floor, sustaining injuries to his shoulder, arm, and ribs.

On May 23, 2007, Mr. Reed filed suit against Ahmad Elsebae, Bill McDaniel, and Ann McDaniel d/b/a McDaniel Billiard Supply and Custom Cues. The claims against Ann McDaniel were voluntarily dismissed by Order dated June 18, 2007. On June 11, 2007, Mr.

Reed was allowed to amend his complaint to add William J. Ryan as a defendant. Mr. McDaniel had sold his business to Mr. Ryan prior to May 23, 2007. The claims against Mr. Ryan were also voluntarily dismissed without prejudice. By his amended complaint, Mr. Reed alleged that the floor of the storage building was kept in a dangerous and unsafe condition, that Messrs. Elsebae and McDaniel failed to reasonably inspect and maintain the premises, or to warn others of the dangerous condition of the floor, thus violating a duty owed to Mr. Reed and causing the injuries he sustained.

Messrs. Elsebae and McDaniel each filed answers, denying the material allegations of the Complaint, and alleging comparative fault on the part of Mr. Reed. Following written discovery and party depositions, Mr. McDaniel moved the court for summary judgment. Messrs. Elsebae and Reed both submitted responses to Mr. McDaniel's statement of undisputed material facts.

The court heard the motion for summary judgment on January 12, 2009. On March 11, 2009, the court entered an order, granting Mr. McDaniel's motion for summary judgment. Specifically, the court held that no reasonable jury could find that Mr. Reed was less than 50% at fault for his own injuries. On March 24, 2009, Mr. Reed filed a motion to alter or amend the order granting summary judgment to Mr. McDaniel. Both Messrs. Elsebae and McDaniel filed responses to the motion to alter or amend.

On April 22, 2009, Mr. Elsebae filed an amended answer, which included an additional defense of *res judicata*. On the same day, Mr. Elsebae filed a motion for judgment on the pleadings. Mr. Reed filed no responsive pleadings. On May 4, 2009, the trial court denied Mr. Reed's motion to alter or amend the judgment. On the same day, the parties agreed that Mr. Elsebae's motion for judgment on the pleadings would be treated as a motion for summary judgment. The trial court ultimately granted summary judgment to Mr. Elsebae on the same grounds as it had granted summary judgment to Mr. McDaniel–that no reasonable jury could find that Mr. Reed was less than 50% at fault for his own injuries. The order granting Mr. Elsebae's motion was entered on May 26, 2009. Mr. Reed appeals and raises two issues for review as stated in his brief:

> 1. The trial court erred in finding the condition of the floor on the second story of the storage building was "open and obvious"
>
> 2. Even if the dangerous condition on the premises was "open and obvious," whether [Mr. Reed] was 50% or more at fault is properly left to the jury.

It is well settled that a motion for summary judgment should be granted when the

movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must them demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn .1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's decision on summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

In order to bring a successful suit based on a claim of negligence, the plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)); *Lindsey v. Miami Dev. Corp*., 689 S.W.2d 856, 858 (Tenn. 1985)). Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. *Bradshaw*, 854 S.W.2d at 869.

In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. ***Eaton v. McLain***, 891 S.W.2d 587, 593 94 (Tenn. 1994). This duty is based upon the assumption that the owner has superior knowledge of any perilous condition that may exist on the property. ***See, e.g., Kendall Oil Co. v. Payne***, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition, and to remove or warn against latent or hidden dangerous conditions of which the owner is aware or should be aware through the exercise of reasonable diligence. ***Eaton***, 891 S.W.2d at 593-94. However, our Supreme Court has held that a duty may exist even where the injury-causing condition is alleged to be open and obvious to the plaintiff:

> That a danger to the plaintiff was open and obvious does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

***Coln v. City of Savannah***, 966 S.W.2d 34, 43 (Tenn. 1998).

In essence, foreseeability is the gravamen of negligence. If the injury that occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. "'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'" ***Doe v. Linder Constr. Co.***, 845 S.W.2d 173, 178 (Tenn.1992) (citations omitted). From our reading of the record, there is evidence to suggest negligence on the part of all parties in this case. However, since our Supreme Court's decision in ***McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn.1992), the proximate contributory negligence of the plaintiff is no longer a bar to recovery. Rather, if the plaintiff's negligence is less than that of the tortfeasor, the plaintiff may recover damages reduced by a percentage of the plaintiff's own negligence. ***Id***. at 57. "While comparative fault is typically a question for the trier of fact, summary judgment is appropriate in those situations where reasonable minds could only conclude that ... the plaintiff's fault was equal to or greater than the fault of the defendant." ***Norris v. Pruitte***, No. 01A01-9709-CV-00506, 1998 WL 1988563, at *3

(Tenn. Ct. App. Aug. 24, 1998) (citing John A. Day & Donald Capparella, Tennessee Law of Comparative Fault 12-18 (1997)).

Traditionally, liability has not been imposed on a premises owner by courts of this state for injuries that resulted from defective or dangerous conditions that were "open and obvious." *See McCormick v. Waters*, 594 S.W.2d 385 (Tenn. 1980); *Kendall Oil Co. v. Payne*, 293 S.W.2d 40 (Tenn. Ct. App. 1955). In cases after *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), liability in premises liability actions has been determined according to the principles of comparative fault:

> When an invitee is injured because of dangers that are obvious, reasonably apparent, or as well known to the injured party as to the owner or operator of the premises, liability, if any, should be determined in accordance with the principles of comparative fault analysis and the general negligence law of this state.

*Cooperwood v. Kroger Food Stores, Inc.*, No. 02A01-9308-CV-00182, 1994 WL 725217 (Tenn. Ct. App. Dec. 30, 1994).

As noted above, our Supreme Court has provided further guidance in determining liability in these types of cases. In *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), the Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id*. at 43. Moreover, our Supreme Court has held that an assumption of the risk issue should be analyzed "under the principles of comparative fault." *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994). Specifically, the *Perez* Court held that "attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk." *Id.*

We concede that there is a dispute of fact as to whether Mr. McDaniel, in fact, warned Mr. Reed of the dangerous condition of the building. However, even if we give Mr. Reed the benefit of doubt and conclude that Mr. McDaniel failed to warn Mr. Reed, that finding does not end our analysis concerning the trial court's grant of summary judgment. Applying the above authority, the gravamen of this case is whether Mr. Reed appreciated, or should have appreciated, the risk of walking on the damaged floor; and whether, having appreciated that risk, nonetheless undertook to traverse the floor. *Perez v. McConkey*, 872 S.W.2d at 905.

Turning to the record, from Mr. Reed's own testimony, there is no dispute that he knew and appreciated the dangerous condition of the building when he undertook to walk on the second floor, to wit:

> Q. Did anybody, Mr. McDaniel or any of his employees, advise you [Mr. Reed] of any type of condition[] in th[is]...building[] you went in here [i.e., the storage building where Mr. Reed fell through the second floor].
>
> A. No, sir. When we [i.e., Mr. Reed and his helpers] opened it, I looked. The first thing I do is look for myself, you know, what type of thing I'm walking into. You know what I mean? I just–
>
> Q. Is that your common practice to do that?
>
> A. Yeah, it's just common practice to look where you're at, you know, and see what's going on, you know.
>
> Q. All right. And you said you had been in the building where you fell the day prior to the fall, if I understand that correct.
>
> A. Yes, sir.
>
> Q. And you're telling me now that nobody warned you of any type of condition?
>
> A. No, I wasn't told anything, but I looked myself when I got here, and I saw stuff, you know. I knew to be caution [sic]. When I looked from the front door...[t]he light from the door and I'm looking–I looked down this wall and saw that water, I knew...to be careful...and I said, "Man–" There's a bucket I could see down there from the light from the door, and I said, "There's a bucket of water. It's slap full".... When we got down there there was a bucket of water, and the bucket was run over. It'd been there so long that it was ran [sic] over....
>
> Q. And I take it–I think in your interrogatory responses you said that you thought the roof leaked and caused the floor problem. Is that correct?

A.  That I thought the roof leaked?  I knew–

Q.  Yes, sir.

A.  It leaked everywhere 'cause there was a bucket of water sitting there halfway down.  I knew to be careful for my protection, to protect myself...to look easily, you know.  I saw that bucket of water down there....

\*                                    \*                                    \*

Q.  And that [i.e., the bucket full of water] gave some indication to you, "I need to be a little careful here."

A.  Be real careful, yeah.

Q.  'Cause something's leaking.


Although Mr. Reed contends that the portion of the second-story floor that he could see looked "perfect," our review of the deposition exhibits show otherwise.  From the photos, it is obvious, both from the first floor looking up, and from the second floor looking down, that the flooring was rotten.  Considering these photos along with Mr. Reed's own testimony that he was cognizant of the condition of the building, a reasonable person could only conclude that Mr. Reed was aware of the risk and thereafter confronted it.  Additionally, a reasonable person could only conclude that Mr. Reed was in the best position to protect himself from the danger, which he observed.  Mr. Reed could have chosen not to walk on that floor, which he knew was possibly water damaged.  *Coln*, 966 S.W.2d at 43.  A reasonable fact finder could only conclude, that by choosing to walk across the floor, knowing of the danger, Mr. Reed did not act reasonably.   We can only surmise that any reasonable fact finder could only conclude that Mr. Reed was primarily responsible for his own injuries, thus barring his ability to recover under *McIntyre.*

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Appellees.  Cost of this appeal are assessed to the Appellant, William W. Reed, and his surety.

_____

J. STEVEN STAFFORD, JUDGE

-8-