IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 25, 2026 Session

## MARGARET DANIEL ET AL. v. RICK'S BARBEQUE,[1] INC. ET AL.

**Appeal from the Circuit Court for Lawrence County**
**No. 3344-19  Christopher V. Sockwell, Judge**

_____

**No. M2025-01009-COA-R3-CV**

_____

This appeal requires us to determine whether the trial court erred in granting summary judgment to the Appellees, finding that Appellant's own inattention was the cause of her accident and that she was more than 50% at fault for her injuries.  Discerning no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

STEVEN W. MARONEY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and VALERIE L. SMITH, J., joined.

Lewis Latane Cobb, Jackson, Tennessee, and W. Justin Reynolds, Savannah, Tennessee for the appellants, Jerry Daniel and Margaret Daniel.

Marshall W. Stair and Cameron Drew Kirkland, Knoxville, Tennessee, for the appellees, Rick's Barbeque, Inc., Richard Lanning, and Karen Lanning.

## OPINION

### I. Background

On July 7, 2018, Margaret Daniel and her husband, Jerry Daniel (together, "Appellants"), and two other family members ate at Rick's Barbeque, a restaurant owned by Richard and Karen Lanning (together with Rick's Barbeque, "Appellees"). Appellants

---

[1] Throughout the record, Appellee's name is denoted as "Rick's BBQ," "Rick's Barbecue," and "Rick's Barbeque."  For purposes of this opinion, we adopt the spelling, "Barbeque," as used in the Complaint, with apologies to Appellee if this is incorrect.

sat in a booth located on an elevated platform that required patrons to step up to be seated and to step down to exit the booth. It is undisputed that there were placards on the support structures between each booth, which read, "Watch Your Step." It is also undisputed that another placard was affixed to the Appellant's table, reading, "Step Down." The floor of the booth itself, as well as the side of the elevated platform and the main floor were covered with tile and grout of the same color, but the main floor tile had a different pattern and size than the tile installed on the booth floor under the table.

All four members of Appellants' party entered the elevated booth, ate their meal, and approximately thirty-to-forty-five minutes later, began to leave. The security-camera footage of the incident undisputedly shows the following. The first person to exit the booth was Mr. Kevin Gallaher, Mr. Daniel's cousin, who navigated the step down from the booth (with his prosthetic leg) without issue. The second person to exit the booth was Mr. Daniel, who used a walking cane. He, too, exited the booth without incident. The third person to exit the booth safely was Appellants' granddaughter, Ms. Kana Holt.

The last person to exit the booth was Mrs. Daniel. The camera footage shows that she stood up on the elevated platform and, without looking down, took a step with her right foot to exit the booth. Unfortunately, Mrs. Daniel missed the step down and fell forward from the booth onto the main floor of the restaurant. As a result of her fall, Mrs. Daniel sustained a broken right hip that required surgery and therapeutic rehabilitation.

On July 5, 2019, Appellants filed a complaint in the Lawrence County Circuit Court ("trial court"), alleging claims for negligence and loss of consortium. In the complaint, Appellants averred, in part, that: (1) the raised step caused Mrs. Daniel to fall; and (2) "the change in elevation where the raised step was situated was unmarked and was the same color of the flooring such that it blended in completely with the surrounding area." Appellants further alleged that, as a result of the dangerous condition, *i.e.*, the step being unmarked and of the same color as the main flooring, Appellees were negligent insofar as they: (1) "[f]ailed to maintain the premises in a reasonably safe condition"; (2) "[f]ailed to warn Mrs. Daniel of the condition of the elevated step"; (3) "[a]llow[ed] the elevated step to remain in a dangerous condition when they knew, or in the exercise of reasonable care, should have known the walkway was in a dangerous and hazardous condition given its location of general traverse by the public"; (4) "[f]ailed to take reasonable action to prevent Mrs. Daniel from falling on the elevated step"; (5) "[f]ailed to prevent or reduce injury to persons for unforeseeable falls"; and/or (6) "[f]ailed to provide adequate notice of the dangerous condition in the way of a marking, signage and/or other warning so as to prevent injury."

On August 5, 2019, Appellees filed an answer, wherein they denied any negligence and asserted that

Margaret Daniel was negligent in her failure to pay proper attention to her surroundings, to pay proper attention to clearly posted warning signage on and around the booths, and for her failure to act with reasonable care and diligence in her walking steps after safely stepping into the booth before her fall and watching her meal companions safely step out of the booth before her. [Mrs. Daniel's] own negligence was the sole and proximate cause of her alleged injuries and/or damages. Since [Mrs. Daniel's] comparative fault for her alleged fall meets or exceeds 50%, [Appellees] respectfully request their dismissal from this lawsuit.

On November 1, 2024, Appellees filed a motion for summary judgment with a supporting memorandum, wherein they asserted that "Mrs. Daniel is unable to prove essential elements of her case, to wit: that a dangerous condition existed, that it was breached, and that a dangerous condition was the cause in fact or the proximate cause of Mrs. Daniel's injuries." Appellees also reiterated their comparative fault argument, stating that "no jury could conclude other than that Mrs. Daniel was 50% or more at fault."

On February 6, 2025, Appellants filed a response in opposition to Appellees' motion for summary judgment. Appellants argued that there were disputes of material fact that precluded summary judgment. Specifically, Appellants asserted that,

[a]lthough [Appellees] claim warning signs were posted — one reading "Watch Your Step" and another "Step Down" — Mrs. Daniel did not see either sign as she fell. The "Watch Your Step Sign" was attached to the side of the booth facing the restaurant floor and was not visible while exiting the booth. The "Step Down" signs were small, not prominently placed, and easily overlooked, while exiting, in the busy restaurant environment.
      [Appellants'] expert, a premises safety specialist, will testify that the design of the booth created an unreasonably dangerous condition. The uniform tile provided no visual cues to indicate the change in elevation. Industry safety standards recommend the use of contrasting colors or high-visibility markings on steps to alert patrons to potential hazards. The absence of such markings significantly increased the risk of missteps and falls, particularly in a setting where patrons' attention may be divided.

(Citations to record omitted). Appellants argued that these allegedly disputed facts required the issue of causation to be tried by a jury. Likewise, they argued that the question of comparative fault is "[i]nherently a jury issue when reasonable minds could differ."

On June 10, 2025, the trial court entered an order granting Appellees' motion for summary judgment. As discussed further below, the trial court found that "while a dangerous condition may have existed (taking the evidence in the most favorable light to the [Appellants]), the [Appellants] must still prove that the dangerous condition was the cause of Mrs. Daniel's fall and resulting injuries." The trial court went on to find that Appellants had "not brought forth proof" that Mrs. Daniel's fall was caused by the alleged dangerous condition. Additionally, the trial court found that "reasonable minds cannot differ such that [Mrs. Daniel's] actions under comparative fault principles would make her at least fifty percent responsible for her fall on the floor and resulting injuries." This finding was predicated on the court's evaluation that Mrs. Daniel had a "personal duty to look out for her own well-being" and that her failure to "not notice either of the posted warning signs" and failure to "look down as she exited the booth" precluded recovery. Appellants timely filed their notice of appeal on July 7, 2025.

## II. Issues

Appellants raise the following issues:

1. Summary judgment requires viewing evidence in the light most favorable to the non-moving party, and reasonable minds could differ on whether the Appellant's failure to look down or the [Appellees'] creation of a camouflaged hazard was the substantial factor; therefore, whether the trial court erred in determining comparative fault as a matter of law.
2. Summary judgment prohibits courts from choosing between competing reasonable inferences, and the video supports the equally reasonable inference that the appellant acted reasonably while navigating an apparently level surface; therefore, whether the trial court improperly weighed evidence by interpreting the video in favor of the [Appellees].
3. [Appellants] must only show that the dangerous condition was a substantial factor in causing the injury, and [Mrs. Daniel] testified the step was not visible and fell at the precise location of the obscured elevation change; therefore, whether the trial court improperly resolved causation as a matter of law.[2]

Appellants' issues are more succinctly states as one: Whether the trial court erred in granting summary judgment in favor of Appellees.

## III. Standard of Review

Regarding the standard of review for cases disposed of by summary judgment, the

---

[2] We not that Appellants set out four issues in their brief. However, the fourth issue is merely a verbatim recitation of the third issue.

Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997); *see also* **Abshure v. Methodist Healthcare-Memphis Hosp.**, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. **Estate of Brown**, 402 S.W.3d 193, 198 (Tenn. 2013) (citing **Hughes v. New Life Dev. Corp.**, 387 S.W.3d 453, 471 (Tenn. 2012)).
>
> ***
>
> [I]n Tennessee . . . when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co. [v. Zenith Radio Corp.]**, 475 U.S. [574,] 586, 106 S.Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the

nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015). "On review, we accept the evidence presented by . . . the nonmoving party, as true; allow all reasonable inferences in [the nonmoving party's] favor; and resolve any doubts about the existence of a genuine issue of material fact in favor of [the nonmoving party]." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019).

## IV. Analysis

### A. Law on Negligence in Premises Liability Cases

To resolve this appeal, we first consider the elements of negligence applicable in premises liability cases, then apply those principles to the undisputed facts—including the video evidence—bearing on causation and comparative fault. The Tennessee Supreme Court has explained:

[A] negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g.*, *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). The duty element is a question of law requiring the court to determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Id.* at 870 (quoting W. Page Keeton, Prosser & Keeton on Torts, § 37 at 236 (5th ed. 1984)). Appellate review of a question of law is de novo. *Bradshaw*, 854 S.W.2d at 870.

In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm. *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 902 (Tenn. 1996). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon

defendant to engage in alternative conduct that would have prevented the harm." **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995).

In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See* **Blair v. Campbell**, 924 S.W.2d 75, 76 (Tenn. 1996); **Eaton v. McLain**, 891 S.W.2d 587, 593-94 (Tenn. 1994). Although the traditional rationale for imposing this duty was the owner's superior knowledge of conditions on the premises, *see e.g.,* **Kendall Oil v. Payne**, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. [Ct.] App. 1955), we recently held that a duty may exist even where the injury-causing condition is alleged to be "open and obvious" to the plaintiff. We explained:

> That a danger to the plaintiff was 'open or obvious' does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

**Rice v. Sabir,** 979 S.W.2d 305, 308, 309 (Tenn.1998) (citing **Coln v. City of Savannah**, 966 S.W.2d 34, 43 (Tenn. 1998) (some citations omitted), *overruled on other grounds by* **Cross v. City of Memphis**, 20 S.W.3d 642, 644 (Tenn. 2000)).

However, "the duty imposed on the premises owner or occupier . . . does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" **Rice**, 979 S.W.2d at 309 (quoting W. Page Keeton, Prosser & Keeton on Torts, § 61 at 426 (5th ed.1984)). As such, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id*. at 426-27. As the Tennessee Supreme Court has stated:

- 7 -

Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury."

*Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992) (citations omitted).

As noted above, in their motion for summary judgment, Appellees attack Appellants' prima facie case on multiple grounds. First, they argue that Appellant cannot show that a dangerous condition existed. However, if a dangerous condition did exist, Appellees maintain that they did not breach any duty owed to Mrs. Daniel. Appellees further argue that if a dangerous condition did exit, it was not the cause of Mrs. Daniel's injuries. Finally, if Appellants make a prima facie case for negligence, Appellees contend that Mrs. Daniel was more than 50% at fault for the accident, thus negating her lawsuit under the doctrine of comparative fault. We will address each of these arguments in turn.

### B. Dangerous Condition and Breach of Duty

As previously stated, Appellants' lawsuit is premised, in part, on their averment that Appellees allowed a dangerous condition to exist on their premises and failed to warn Mrs. Daniel of that dangerous condition, thus breaching the duty of reasonable care. In contesting Appellees' motion for summary judgment, Appellants tendered the statement of their expert, Russell J. Kendzior. According to Mr. Kendzior's Curriculum Vitae, he is an "[i]nternationally recognized safety expert specializing in slip, trip and fall prevention." Mr. Kendzior states that the design of the booth created an unreasonably dangerous condition because the uniform tile provided no visual clues to indicate the change in elevation from the floor to the booth.

Again, at the summary judgment stage, we must view the evidence in a light most favorable to the claims of the non-moving party, with all reasonable inferences drawn in favor of those claims." *Rye*, 477 S.W.3d at 286. Applying this mandate here, and based on Mr. Kendzior's statement, we must assume that the booth configuration was a dangerous condition.

Turning to the question of breach of duty, Mr. Kendzior further opined that Appellees should have used contrasting colors or high-visibility markings on the step to alert patrons of the potential hazard. He also stated that Appellees should have configured the booth seating so that

the end of the table [is] the same distance (width) as the end of the elevated platform[,] so when a seated guest enters or exits the booth they do not have to stand up or off of the single step created by the platform but rather slide in or out of the booth directly onto the dining room floor.

In her deposition, filed in opposition to the motion for summary judgment, Mrs. Daniel testified that:

Q [to Mrs. Daniel]. You don't have any idea what caused you to fall?
A. The thing wasn't visible there. I just scooted over there. Next thing I knew, when I started to step down, I just went flying through the air seemed like.
Q. You said the thing wasn't visible. What wasn't visible?
A. The step. When I stepped down, it just went—when I stepped down, I just went out of balance.

In addition to testifying that the step-down was not visible, Mrs. Daniel also testified that the "Watch Your Step" and "Step-Down" signs were not noticeable, to-wit:

Q. Were there any signs telling you that the booth was elevated?
A. Not that I saw.

*** 

Q. Did you see any signs telling you to watch your step or anything like that?
A. No.

*** 

Q. And the sign that you read earlier that says watch your step, that is in bright yellow, right?
A. Yes.
Q. You are saying you did not see that at all before the accident?
A. No, I did not.
Q. Do you remember seeing any signs on the tables?
A. No.

Taking Mr. Kendzior and Mrs. Daniel's statements as true and making all inferences in Appellants' favor, a reasonable jury could conclude that Appellees breached a duty to warn or protect against the dangerous condition by failing to modify the booth configuration, or by not providing sufficient safety enhancements and signage.

However, even if Appellees breached a duty to correct the dangerous condition or to warn Mrs. Daniel of it, this conclusion is not dispositive of Appellees' motion for

summary judgment. Appellees also attacked the causation element of Appellants' prima facie case.

## C. Causation

In a negligence action, both causation in fact and proximate cause must be established. ***Hale v. Ostrow***, 166 S.W.3d 713, 718 (Tenn. 2005). Causation, ordinarily decided by a jury, may be decided at the summary judgment stage if "the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." ***Id.***, 166 S.W.3d at 718 (quoting ***Haynes v. Hamilton County***, 883 S.W.2d 606, 612 (Tenn. 1994)).

The cause in fact question is answered by asking "whether the plaintiff's injury would have happened 'but for' the defendants' act." ***Hale***, 166 S.W.3d at 718. Importantly, "[i]t is not necessary that the defendants' act be the sole cause of the plaintiff's injury, only that it be a cause." ***Id***. The proximate cause question is a question of where to place "a limit on the causal chain[.]" ***Id***. at 719. It prevents defendants from being "held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." ***Id***. at 719.

As discussed above, in their motion for summary judgment, Appellees assert that Appellants cannot show that the dangerous condition or any breach of duty by Appellees caused Mrs. Daniel to fall. Rather, they maintain that the proximate cause of the accident was Mrs. Daniel's failure to register that the booth was elevated, coupled with her failure to look where she was going as she stepped out of the booth.

Concerning Appellees' contention that Mrs. Daniel failed to register the step-down, the trial court agreed, finding that:

> Mrs. Daniel did not recall the exact mechanics of her fall, but in her deposition testimony stated that she "went down" without anticipating the drop. She also testified that she was aware the booth was elevated but did not consciously register the step down after she had to slide and step down to exit.

> • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

> Mrs. Daniel acknowledged in her deposition that she was aware the booth was elevated, as she had previously stepped up in order to enter the booth, but she stated in her deposition that she did not consciously register the stepdown when she attempted to exit the booth.

Turning back to Mrs. Daniel's deposition, she testified, in relevant part:

Q. When you got [to the restaurant] and went to get your table and went into the booth, you had to step up on the platform, right?
A. Yes.
Q. So you knew the booth was elevated was from the floor, right?
A. When I started to scoot, I never even thought about it.
Q. I'm talking about when you first went to the table and sat down.
A. I'm sure I did.
Q. Did you have to step up to get into the booth?
A. I'm sure I did.
Q. So you knew the booth was elevated?
A. At the time I did.
Q. Did you forget that when you were leaving?
A. Yeah. We were talking, enjoying the food and everything, and I just—

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Q. You testified earlier when you went to sit at the booth you had to step up to get into it?
A. Yes.
Q. At some point you knew it was elevated?
A. Yes.
Q. Just so we have a clear transcript, my question was, you stepped into the booth when you went to take your seat, so did you know the booth was elevated?
A. Yes.

Mrs. Daniel's undisputed testimony supports the trial court's conclusion that, although Mrs. Daniel was aware of the step-up when she entered the booth, she did not recall the step when exiting the booth.

In this regard, the instant case is similar to ***Herbison v. Hansen Chrysler Plymouth, Inc***., No. 01A01-9710-CV-00594, 1998 WL 485668 (Tenn. Ct. App. Aug. 19, 1998). In ***Herbison***, the plaintiff tripped over a metal strip along the doorway of a store's entrance. *Id.* at *2. In affirming the trial court's grant of summary judgment in favor of the defendant store, we reasoned that, "Even though the attention of the injured party may have been diverted . . . , he had adequate opportunity to familiarize himself with the nature of his pathway . . . on the day of his injury as he approached the doorway from the parking lot." *Id.*, at *3. Likewise, from her own testimony, Mrs. Daniel had adequate opportunity to familiarize herself with the elevated platform when she stepped up into the booth. Indeed, in her deposition, she admits that she was aware of the step but somehow forgot about it on exiting the booth.

The trial court also agreed with Appellees' contention that Mrs. Daniel failed to keep a proper look as she exited the booth. Relying on the video of the incident, the trial

court found that:

A review of the video also revealed Mrs. Daniel . . . standing up on the raised portion of the floor with her head up looking in the distance. At no time did it ever appear that [she] looked down prior to stepping off the elevated floor. She stepped with her right foot, again with her head up, then fell forward onto the floor.

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

[T]he video itself indicated that Mrs. Daniel never looked down at the floor, and, in fact, during the entire time she was moving toward the edge of the booth, and after she stood up, she never looked down and was in fact looking up and away from the floor itself.

The undisputed facts support the trial court's findings. In her deposition, Mrs.

Daniel testified:

Q. Did you look down at the ground at all as you were stepping out of the booth?
A. I can't tell you that.

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

Q. Did you look down before you put your foot down? Is that what you were saying you don't remember?
A. I don't remember if I did or not.

Although Mrs. Daniel could not recall where she was looking, we have reviewed the video, and we agree with the trial court's conclusion that Mrs. Daniel was not looking at the ground when she exited the booth. The following photos show two frames of the video, and these were the last two moments before Mrs. Daniel fell.





- 14 -

Only one conclusion can be drawn, and that is the one reached by the trial court: "[I]n taking [Mrs. Daniel's] testimony in concert with the video itself, the video shows that she was moving to her left to exit the booth, and she never looked down. In fact, when she stood up, the video showed her with her head tilted slightly up such that she appeared to be looking across the room." In short, the video negates an essential element of Appellants' prima facie case, *i.e.,* causation.

The instant case is similar to ***Young v. First Bank of Tennessee***. In that case, the plaintiff tripped and fell over a raised curb in a bank parking lot. The curb was the same color and material as the parking lot itself. In affirming the trial court's grant of the bank's motion for summary judgment, we held that: (1) "the curb was not obstructed from normal vision"; and (2) "even if some duty to warn such as painting the curb existed . . . this [p]laintiff was not looking where she stepped when she blindly backed into the curb." ***Id***.

Appellants attempt to distinguish this case from ***Young*** based on the ***Young*** Court's conclusion that "undisputed facts compel the conclusion that if the plaintiff had looked— which she admittedly did not—***she would have seen the curb***, and that the cause of her injury was not the bank's alleged failure to paint the curb or otherwise call attention to it, but the plaintiffs' failure to look where she was stepping." ***Id***. (emphasis added). Relying on the emphasized language, Appellants argue that, unlike the plaintiff in ***Young***, who could have seen the curb had she looked down, Mrs. Daniel would not have seen the step even if she were looking down. Appellants rely on Mr. Kendzior's opinion that the step was too close to the end of the table such that it allegedly was obscured and could not be seen by a patron sitting in the booth.

The video evidence negates Appellants' argument. Even if we assume (as we must at the summary judgment stage) that the location of the step vis-à-vis the table constituted a dangerous condition and that Appellees breached a duty to configure their booths in such a way that the step was more visible, the video clearly shows that Mrs. Daniel did not look down at her path of travel when she exited the booth. Appellants would have the Court accept their argument that the proximate cause of Mrs. Daniel's fall was a step that was not visible to her because it was made of the same-colored tile and grout or was otherwise obscured by the table. Yet, the uncontroverted video evidence shows Mrs. Daniel never looked down at the step before she fell. This was the cause of her accident.

### D. <u>Comparative Fault</u>

As the trial court correctly notes, Mrs. Daniel had a personal duty to see and perceive hazards in plain sight. Based on her failure to recall that the booth was elevated and based on her failure to look down as she exited the booth, the trial court held "that reasonable minds cannot differ such that [Mrs. Daniel's] actions under comparative fault principles would make her at least fifty percent responsible for her fall on the floor and resulting injuries."

Having determined that Appellees successfully negated the causation element of Appellants' case, a comparative-fault analysis is not necessary to the adjudication of this appeal. *See **Green v. Roberts***, 398 S.W.3d 172, 182, n.2 (Tenn. Ct. App. Oct. 11, 2012) ("Our decision that Ms. Green cannot show the essential element of [her negligence case] renders the other basis for the trial court's ruling, specifically that Ms. Green was more than 50% at fault for her injuries, moot."); *see also **Young***, 2011 WL 332700, at \*4 ("In the absence of any reason for assigning fault to the bank, we decline to decide whether, if the bank is assumed to be at fault, the plaintiff was 50% or more at fault."). However, because the trial court engaged in and relied on a comparative-fault analysis, in the interest of full adjudication, we will review those findings.

In its order granting Appellees' motion for summary judgment, the trial court correctly notes that, "Mrs. Daniel had a personal duty to see and perceive hazards in plain sight, inattention toward a potentially dangerous condition by the injured party may justly be found to hold the victim at least fifty percent responsible for their injuries."

In ***Berry v. Houchens Mkt. of Tenn., Inc.***, 253 S.W.3d 141 (Tenn. Ct. App. 2007), the plaintiff slipped in a large puddle of oil on defendant's premises. In affirming the trial court's grant of defendant's motion for summary judgment, we observed that:

> In this case plaintiff testified she got out of the car on the driver's side, closed the door and started walking slowly around the car. Her explanation for not seeing the oil until she was lying in it was that she was looking straight ahead and that she never looks down when she is walking. . . . [S]he had a duty to see what was in plain sight . . . and to avoid walking into it. While [defendant] clearly had a duty to maintain the parking lot in a reasonably safe condition, reasonable minds would not differ because of plaintiff's absolute lack of attention to where she was walking she was at least fifty percent responsible for her fall and subsequent injury.

***Berry***, 253 S.W.3d at 148; *accord **Easley v. Baker***, No. M2003-02752-COA-R3-CV, 2005 WL 697525 (Tenn. Ct. App. March 24, 2025) (affirming the trial court's grant of summary judgment to defendant where plaintiff saw "neither the five-foot-wide, one-half-inch-deep puddle of water[, in which he slipped and fell,] nor the 18-inch tall 'wet floor' sign that is in the puddle"); ***Smid v. St. Thomas Hosp.***, 883 S.W.2d 632, 634 (Tenn. Ct. App. 1994) ("We believe that the defendant had no duty to protect the plaintiff from the consequences of his action, when he could have easily protected himself by simply looking where he was about to step.").

The foregoing cases are instructive. Here, given Mrs. Daniel's knowledge of the step (as evidenced by her own testimony, *supra*), and in view of the undisputed fact that she did not look down when exiting the booth (as evidenced by the video and the photographs above), we agree with the trial court's reasoning that:

Mrs. Daniel's ability to protect herself from injury lay simply in looking where she was about to step rather than blindly stepping off without thinking . . . . Mrs. Daniel's duty was not only to think as she exited the booth but to look down and ensure her footing was secure as she stepped down. When an injured party has knowledge of a condition's existence, as Mrs. Daniel did in this case, and was in position to see it if they had just looked, there is no unknown hazard.

Accordingly, we affirm the trial court's conclusion that, "reasonable minds cannot differ such that [Mrs. Daniel's] actions under comparative fault principles would make her at least fifty percent responsible for her fall on the floor and resulting injuries" (citing *Easley* 2005 WL697525, *8 (citing *Madison v. Pickett Co. Bank & Trust Co*., 33 S.W.3d 815, 816 (Tenn. Ct. App. 2000) ("[R]reasonable minds cannot differ but that plaintiff's own inattention under comparative fault principles is at least 50 percent responsible for his slipping on the floor and his resulting injuries.")).

## V. Conclusion

For the foregoing reasons, the trial court's order granting Appellees' motion for summary judgment is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Jerry Daniel and Margaret Daniel. Execution for costs may issue if necessary.

s/ Steven Maroney_____
STEVEN W. MARONEY, JUDGE